(277 P.3d 1163)
No. 105,964

In the Matter of the Estate of BETTY JO STRADER, Deceased.

Opinion filed April 20, 2012.

*David P. Troup*, of Weary Davis, L.C., of Junction City, for appellant Janet Pralle.

*John McNish*, of Bolton & McNish, LLC, of Marysville, for appellee Eric Strader.

*William C. O'Keefe*, of Seneca, for appellee Estate of Betty Jo Strader.

*Joseph A. Knopp*, of Knopp and Bannister, P.A., of Manhattan, for appellees Roger Strader and Regina Crowell.

Before GREENE, C.J., PIERRON and MARQUARDT, JJ.

PIERRON, J.: Janet Pralle appeals the district court's admission of the will of Betty Jo Strader, her late mother, to probate. Janet argues the will, found more than 4 years after Betty's death, is time-barred and the savings provision does not apply. We affirm the district court's decision based on the unusual facts of this case.

On October 19, 2006, Betty died in Blue Rapids, Marshall County, Kansas. She was predeceased by her husband, Gerald

Strader, and survived by five adult children: Roger Strader, Alan Strader, Janet Pralle, Eric Strader, and Regina Crowell.

In December 2006, Eric filed a petition for letters of administration through his attorney, Darrell Spain. He claimed that Betty died intestate with approximately $300,000 in real estate, $20,000 in annual income, and $200,000 in personal property, and requested that Jerry Weis be appointed administrator of the estate. Janet filed an objection to the appointment of both Weis as administrator and Spain as the estate's attorney, alleging a conflict of interest.

On February 2, 2007, the district court found that Betty had died intestate on October 19, 2006, and appointed Weis administrator of her estate. Weis later valued Betty's estate at $904,415.56—$589,000 in real estate, $1,000 in household furnishings, $10 in securities, $65,985.56 in mortgages, notes, and cash, $85,200 in other personal property, and $163,220 in an oil drilling company. Throughout 2007, Weis facilitated the sale of livestock, grain, scrap metal, heavy equipment, and a lease of pastureland. Janet's appeal of a proposed sale of real and personal property and payment of Eric's $10,000 oil drilling company bonus resulted in protracted litigation. See *In re Estate of Strader*, No. 101,195, 2010 WL 1882146 (Kan. App. 2010) (unpublished opinion) (remanded for decision on merits of appeal).

In November 2010, Weis was discharged as administrator due to health concerns and replaced by William O'Keefe. In December 2010, the district court approved a public auction of the real and personal property and, notwithstanding Janet's objection, permitted a partial distribution of $20,000 to each heir. Betty's estate was worth $1,348,146.62 at final valuation, including $898,900 in real estate and $160,527.63 in personal property.

On February 22, 2011, Jason Brinegar, of Galloway Wiegers & Brinegar, P.A. (law firm), notified the court that Betty's will had been found at his Marysville law office "[d]uring a recent review of old files and general housekeeping." That same day, Eric filed a petition for probate of the will under K.S.A. 59-618 and petitioned for a stay of the property auctions. Roger and Regina filed a brief in support of Eric's petitions for probate and stay, whereas

Janet filed a petition to deny admission of the will to probate under K.S.A. 59-617.

At the evidentiary hearing on March 21, 2011, the district court took judicial notice of the original wills of both Betty and Gerald. Gerald's will had been admitted to probate years earlier. Cynthia Mason testified she had worked at the law firm as a secretary from 1978 to 2000. Witnessing wills was part of her job description. Mason testified that because the wills bore her signature and proper procedure was always followed, she must have witnessed Betty and Gerald sign their respective wills on August 28, 1985. The law firm relocated in 1984. In the old building, original wills were kept in a big safe. In the new building, they were kept in a large box with drawers like "little safe deposit boxes," which had labels on the front and could hold up to 10 wills. Mason checked the boxes two or three times during her employment to ensure that they were correctly marked.

Keith Sprouse testified he had drafted and witnessed Betty's will. Before becoming a district court judge, Sprouse was a partner at the law firm. He drafted between 50 and 75 wills as a private practitioner. His procedure for drafting a will was to (1) meet with the client to determine his or her wishes regarding property distribution, (2) prepare the document in the proper format, and (3) ensure the document was correctly witnessed. Sprouse drafted and witnessed the wills of both Betty and Gerald. The law firm kept original wills first in a vault, then in a large box containing locked "bank box-like things." Betty's will was kept in that box.

Eric testified he had searched for his mother's will after her death. Gerald had told Eric about the execution of the wills at the law firm, as well as the contents of the wills. Eric never had possession of his mother's will. After Betty died, Eric looked through her house but did not find her original will. Regina called the law firm and scheduled a meeting, which was attended by Eric, Regina, and Roger. In the week following Betty's death, the siblings requested her original will but Brinegar only produced an unexecuted copy. In the second week following Betty's death, Eric looked through her house again, found her safe deposit box key, and went to the bank with Roger, Weis, Spain, and Brinegar. How-

ever, the safe deposit box did not contain Betty's original will. After being notified by O'Keefe on February 16, 2011, that the law firm had found Betty's original will, Eric filed a petition for probate.

Julie Champoux testified she had worked at the law firm for 3 years as an accountant. She and Brinegar were looking through the safe deposit boxes in the law firm for another client's will when Brinegar found Betty's will. Campoux testified he was surprised to find the will.

Janet testitfied that she believed her mother did not have testamentary capacity. Her testimony is not relevant to this appeal.

Spain testified he was the attorney for Betty's estate. After he met with Betty's children at the law firm, Brinegar sent him two unexecuted copies or drafts of Betty's will because "that was the best they could come up with." Janet had one of these copies (the 1996 draft) admitted into evidence to support her argument that Betty did not intend for her 1985 will to control. Upon finding Betty's original will, Brinegar contacted O'Keefe, the administrator of Betty's estate.

Regina Crowell testified that she believed Betty's will was consistent with her intentions regarding property distribution.

After hearing all the evidence, the district court admitted Betty's will to probate. The court found that In re Estate of Tracy, 36 Kan. App. 2d 401, 140 P.3d 1045 (2006), controlled and In re Estate of Seth, 40 Kan. App. 2d 824, 196 P.3d 402 (2008), was in accord. The court also made an express finding that no one knowingly withheld Betty's will from probate.

Janet argues the district court erred in admitting Betty's will to probate under K.S.A. 59-618. Specifically, she argues that a will offered for probate more than 6 months after the testator's death can only be admitted if *knowingly* withheld from probate. Eric, Roger, and Regina contend that any innocent beneficiary can use K.S.A 59-618's savings provision. O'Keefe, the administrator of Betty's estate, agrees with Eric, Roger, and Regina.

Interpretation of a statute is a question of law over which this court has unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *Redd v. Kansas Truck Center*, 291 Kan. 176, 195, 239 P.3d 66 (2010).

If a district court reaches the right result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005).

K.S.A. 59-617 states: "No will of a testator who died while a resident of this state shall be effectual to pass property unless a petition is filed for the probate of such will within six months after the death of the testator, except as hereinafter provided."

An exception to the 6-month limitation is found in K.S.A. 59-618:

> "Any person who has possession of the will of a testator dying a resident of this state, or has knowledge of such will and access to it for the purpose of probate, and knowingly withholds it from the district court having jurisdiction to probate it for more than six months after the death of the testator shall be liable for reasonable attorney fees, costs and all damages sustained by beneficiaries under the will who do not have possession of the will and are without knowledge of it and access to it. *Such will may be admitted to probate as to any innocent beneficiary on petition for probate by any such beneficiary, if such petition is filed within 90 days after such beneficiary has knowledge of such will and access to it,* except that the title of any purchaser in good faith, without knowledge of such will, to any property derived from the fiduciary, heirs, devisees or legatees of the decedent, shall not be defeated by the production of the will of such decedent and the petition for probate of the will after the expiration of six months from the death of the decedent." (Emphasis added.)

K.S.A. 59-617—the limiting statute—was enacted in 1939 as part of the Kansas Probate Code, whereas its exception—the savings provision—was contained in a 1943 amendment. Originally, a probate petition had to be filed within 1 year after the death of the testator. L. 1939, ch. 180, sec. 53. The filing window was subsequently reduced to 6 months. L. 1985, ch. 191, sec. 8 (K.S.A. 59-

617). A knowing withholder of a will was barred from taking under the will in addition to being held liable for the damages suffered by beneficiaries. L. 1939, ch. 180, sec. 54. That bar was subsequently removed. L. 1985, ch. 191, sec. 9 (K.S.A. 59-618).

The Kansas Legislature added the following clauses to K.S.A. 59-618 in 1943:

"[T]he said will may be admitted to probate as to any innocent beneficiary on the application by him for such probate, if such application is made within ninety days after he has knowledge of such will and access thereto and within five years after the death of the testator: *Provided,* The title of any purchaser in good faith, without knowledge of such will, to any property derived from the fiduciary, heirs, devisees, or legatees of the decedent, shall not be defeated by the production of the will of such decedent and the application for probate thereof after the expiration of one year from the death of the decedent." L. 1943, ch. 213, sec. 2.

Subsequent amendments changed "one year" to "nine (9) months," "application" to "petition," L. 1972, ch. 215, sec 2, "the said will" to "Said will," L. 1976, ch. 242, sec. 6, "Said Will" to "Such will," "nine (9) months" to "six months," and struck the "within five years" requirement. L. 1985, ch. 191, sec. 9.

It is noteworthy that a will withholder was once barred from taking under the will because it acknowledges the possibility that the withholder was a beneficiary, rather than a disinterested party. Moreover, the leading treatise on the subject describes a K.S.A. 59-618 withholder of a will as a "delinquent beneficiary" and innocent beneficiaries as those who were not "personally derelict in respect to [the probate] delay" or have not "joined in the suppression of the will." 2 Bartlett, Kansas Probate Law and Practice § 538, p. 40-41 (rev. ed. 1953). Therefore, K.S.A. 59-618 appears to have been enacted to both punish a beneficiary who withholds a will (no taking under the will and liable for damages), and protect innocent beneficiaries (compensated for the inability to probate the will).

Eric's argument that the savings provision was enacted to undo the result of *In re Estate of Colyer,* 157 Kan. 347, 139 P.2d 411 (1943), is fundamentally flawed because that decision was rendered on July 10, 1943, after K.S.A. 59-618 was amended and became effective. One thing is certain, K.S.A. 59-618 was amended to pro-

vide more protection to innocent beneficiaries (who still must be compensated by withholder of will but now are able to probate the will within 90 days of knowledge of and access to will).

In *Tracy*, 36 Kan. App. 2d 401, this court interpreted K.S.A. 59-618 to allow the probate of a lost will. Tracy died on August 21, 2003. Her sister and niece initiated intestacy proceedings, in which the district court found that Tracy had died intestate and appointed the petitioners to be coadministrators. On March 9, 2004, the coadministrators filed an amended petition to probate Tracy's will, claiming the will had been discovered on February 24, 2004; no notice was sent to the will's executor or beneficiary. On February 23, 2005, the executor filed a similar petition, claiming the will had been " 'withheld from probate by the actions of the deceased scrivener, who stored the will in an envelope with old, canceled checks and bank statements.' " 36 Kan. App. 2d at 403. It was undisputed that the executor had access to the will for less than 90 days before filing her petition. The guardian ad litem for the unknown heirs filed an answer opposing probate.

In *Tracy*, the district court held that K.S.A. 59-618 was inapplicable and denied the probate petitions, reasoning that "the wrongdoing of someone who has *possession* and *knowingly withholds* a will from probate was a condition which permitted an innocent beneficiary to submit a will to probate beyond the 6-month time limit." 36 Kan. App. 2d at 407. Janet urges us to adopt this interpretation, something the *Tracy* court refused to do.

To ascertain the legislative intent behind K.S.A. 59-618, the *Tracy* court utilized the *in pari materia* canon of statutory construction. The court found that *In re Estate of Harper*, 202 Kan. 150, 158, 446 P.2d 738 (1968), stood for the following propositions: (1) The intent underlying the Kansas Probate Code is to probate legally executed wills; (2) the probate statutes express the legislative intent that every person's will be offered for probate; and (3) it is a clear public policy to favor the probate of a will over its suppression. *Tracy*, 36 Kan. App. 2d at 408. The court also found that the amendments to K.S.A. 59-618 reflected the intent to (1) submit every legally executed will to probate, (2) penalize people who wrongfully withhold wills, and (3) except innocent beneficiaries

from the 6-month time limit. 36 Kan. App. 2d at 408 (citing L. 1943, ch. 213, sec. 2). The *Tracy* court ultimately held: "The district court's interpretation of K.S.A. 59-618 is contrary to the underlying intent of the probate code, particularly under the facts [presented]." 36 Kan. App. 2d at 408 (admitting will to probate in the absence of a knowing withholding).

The *Tracy* holding is slightly less damaging to Janet's argument than the rationale because this case is factually distinguishable. As in *Tracy*, Betty's will was left with its scrivener and was not discovered within 6 months of her death. Tracy's will was found 6 months and 3 days after death, whereas Betty's will was found about 4 years and 4 months after her death. As in *Tracy*, intestacy proceedings were commenced by Betty's heirs: but Tracy's estate had been fully administered before both the heirs and executor filed their probate petitions amidst opposition from the guardian ad litem (on behalf of unknown heirs), whereas Betty's estate was still being administered when Eric (supported by two other heirs) filed a probate petition amidst opposition from Janet (another heir). Nevertheless, the timeline of this case is not a valid reason for refusing to apply *Tracy*'s rationale because, as the appellees point out, K.S.A. 59-618 protects bona fide purchasers. Once the 6-month probate window has closed, a bona fide purchaser of property from the decedent's estate takes free of any possible devise contained in a subsequently probated will. Therefore, we rely on *Tracy* to affirm the district court's admission of Betty's will to probate.

In *Seth*, 40 Kan. App. 2d 824, this court interpreted K.S.A. 59-618 to allow the probate of a will withheld by a malpracticing lawyer. Seth died on December 4, 2005. In February 2006, Seth's son and daughter found her will and took it to an attorney, whom they instructed to seek its admission to probate. But the attorney failed to probate the will within the prescribed 6-month period, and notified the son of his error in late June 2006. The son quickly retrieved the will, took it to another attorney, and filed a probate petition in late August 2006. He did not seek damages under K.S.A. 59-618 because the attorney had no assets or insurance and had

lost his law license. Seth's grandchildren filed an answer opposing probate.

The district court held that the son was an innocent beneficiary entitled to file a probate petition under K.S.A. 59-618's savings provision. This court agreed. First, the *Seth* court defined "innocent beneficiary" as "a beneficiary without fault for the knowing withholding of a will from probate during the 6-month period following the death of the testator." 40 Kan. App. 2d at 827-28. Second, it defined "such will" as "a will that has been knowingly withheld from probate" and found that Seth's will "was indeed knowingly withheld from probate, thus triggering the potential allowance for a belated filing." 40 Kan. App. 2d at 828. The court's *third finding is irrelevant to this case as it dealt with the issue of whether the son met the saving provision's 90-day filing requirement. Here, it is undisputed that Eric filed his probate petition within the 90-day window. But the court's analysis did produce this relevant dictum: "[I]f there has been no knowing withholding, there would be no need for the savings clause." 40 Kan. App. 2d at 829 The *Seth* court found that its conclusion—K.S.A. 59-618 saved the son's probate petition from being time-barred—was consistent with Kansas' public policy of probating all legally executed wills and not suppressing or withholding wills from probate via "narrow and technical applications of the statutes governing probate." *Seth*, 40 Kan. App. 2d at 829-30 (citing *Harper*, 202 Kan. at 158).

K.S.A. 59-618 could well be interpreted as is desired by Janet. However the statute specifically states: "Such will may be admitted to probate as to any innocent beneficiary on petition for probate by any such beneficiary, if such petition is filed with 90 days after such beneficiary has knowledge of such will and access to it . . . ."

The language of this portion of the statute appears to pursue the goal of probating all valid wills if possible. We readily concede that *the statute might also be interpreted to allow for the late filing only if a withheld will is involved. The placing of this provision in a section which discusses withheld wills and the use of "such will," perhaps referring only to withheld wills, weighs into that conclusion.*

But, we must also note that as far as any innocent beneficiary is concerned, the knowing withholding of a will, or the misplacing of the will, have the same result in that the beneficiary's rights under the will are defeated. Allowing late filing for either reason is logical and does not absolutely depart from the language of the relevant statute.

We also note that Betty's estate was still open when the will was found and that *Tracy* has been in effect for almost 6 years. *Tracy* was not appealed, and *Seth* dealt with a knowingly withheld will (although there is dicta that seems to favor Janet's position) and did not mention *Tracy*. In addition, there has been no legislative action to cure *Tracy* if its finding was incorrect.

For these reasons, we affirm the district court's decision.

Affirmed.

❊ ❊ ❊

GREENE, C.J., dissenting: I respectfully dissent because the majority has not properly construed the statutes in question, nor have they honored clear legislative policy regarding the statutory time bar for the probate of wills. K.S.A. 59-617 establishes a statute of limitations for admitting a will to probate, and beyond that period—6 months after death of the testator—there is only one exception for admission, and that requires a knowing withholding of the will from probate.

The key portions of the operative statute read as follows:

"**Liability and effect of withholding will.** Any person who has possession of the will of a testator dying a resident of this state, or has knowledge of such will and access to it for the purpose of probate, and knowingly withholds it from the district court having jurisdiction to probate it for more than six months after the death of the testator shall be liable .... Such will may be admitted to probate as to any innocent beneficiary on petition for probate by any such beneficiary, if such petition is filed within 90 days after such beneficiary has knowledge of such will and access to it ...." K.S.A. 59-618.

As this court clearly held in *In re Estate of Seth*, 40 Kan. App. 2d 824, 828, 196 P.3d 402 (2009), the statutory term "such will" is "a will that has been knowingly withheld from probate." Prior cases demonstrate that where a will has not been knowingly withheld

from probate, K.S.A. 59-617 bars admission to probate if the will is not filed within 6 months of the testator's death. See *In re Estate of Thompson*, 24 Kan. App. 2d 321, Syl. ¶ 1, 962 P.2d 564, *rev. denied* 263 Kan. 886 (1997); *In re Estate of Pallister*, 13 Kan. App. 2d 337, 770 P.2d 494 (1989). Where a will of the testator is found more than 6 months after his or her death, K.S.A. 59-617 bars admission, and K.S.A. 59-618 provides no exception to this statutory time bar. Our Supreme Court made this clear in *In re Estate of Colyer*, 157 Kan. 347, 139 P.2d 411 (1943), where it stated:

> "Appellant seeks to avoid the force and effect of [59-617] by directing our attention to [59-618] and 59-621, the first of which deals with knowingly withholding a will from probate and damages consequent therefrom, and the second of which deals with the duty of the custodian of a will to deliver it to the court having jurisdiction, and penalties and damages for willful neglect or refusal to so deliver. *The latter sections cannot be interpreted as an exception to the period of limitation in which an application must be made for probate of a will.* The first section [59-617] deals with knowingly withholding so that a beneficiary does not learn of the will and consequently makes no application for its admission to probate. *Its effect is to provide a penalty for the wrongful withholding, and not an exception to the time in which an application for probate must be made.*" (Emphasis added.) 157 Kan. at 349.

This conclusion is also clear from the statutory language alone. The phrase "and knowingly withholds it" in K.S.A. 59-618 is intended to apply to both a person who has possession of the will and a person who has knowledge and access to such will. How do we know? If the phrase "and knowingly withholds it" were to apply only to a person with knowledge and access, there would be no need for a comma after the term "probate." Thus, the language makes clear that the statute has application only if the will is knowingly withheld from probate by either of the two classes of persons described in the first two disjoined phrases.

Moreover, this conclusion is buttressed by the statutory title of K.S.A. 59-618: "Liability and effect of withholding will." Although statutory titles are not definitive statements of legislative intent, the language of the title cannot be ignored as an aid in determining legislative intent. *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, Syl. ¶ 2, 610 P.2d 1107 (1980). Here, the title of the statute indicates that the subject matter of K.S.A. 59-618 is the effect of

withholding a will from probate, not a more general exception to the statutory time bar for admission to probate.

Legislative policy is reflected in K.S.A. 59-617, which forbids the admission of a will to probate more than 6 months after the death of the testator. The only exception is for a will that has been knowingly withheld from probate. Other exceptions could have been established with legislative ease, but our legislature has not chosen to make any such exceptions, and this court should not attempt to create such an exception on its own volition.

Here, the district court made a finding that "no person knowingly withheld the will from probate." I would hold that, given this clear and undisputed finding, K.S.A. 59-618 has no application here whatsoever, and the will should not have been admitted to probate because far more than 6 months had elapsed since the testator's death, thus requiring application of the statutory bar stated in K.S.A. 59-617.

I would reverse the district court and remand with directions to bar admission of the will to probate.