IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 105,964

In the Matter of the
Estate of BETTY JO STRADER, Deceased.

SYLLABUS BY THE COURT

1.

Statutory interpretation is a question of law, and the appellate court's review is unlimited.

2.

When interpreting a statute, the fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. When language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there.

3.

When interpreting a statute to discern legislative intent, statutory language is an appellate court's paramount consideration because the best and only safe rule for ascertaining the intention of the makers of any written law is to abide by the language they have used.

4.

K.S.A. 59-617 functions as a statute of limitations prohibiting the admission of a will to probate more than 6 months after a testator's death.

5.

K.S.A. 59-618 contains the probate code's only exception to the 6-month time limit provided in K.S.A. 59-617. The knowing withholding of a will is an essential condition that must occur before a will can be admitted to probate under K.S.A. 59-618 after the 6-month time limit has expired.

6.

Kansas' long-favored policy of probating all legally executed wills is qualified by the time limit provided in K.S.A. 59-617.

7.

Supreme Court Rule 7.07(b) (2013 Kan. Ct. R. Annot. 67) authorizes an appellate court to award attorney fees for services on appeal in cases in which the district court has authority to award such fees. If a party would be entitled to appellate attorney fees, it must timely file a motion under Rule 7.07(b) to preserve the right to those fees.

8.

K.S.A. 59-1504 requires a district court to award attorney fees to a party who successfully opposes the probate of a will. Such an award is payable out of the estate and must be just and proper.

9.

K.S.A. 59-2214 requires the district court to tax the costs of probate against the estate unless it appears it would be unjust and inequitable to do so. Attorney fees may be taxed as costs against the estate. But the general costs provision in K.S.A. 59-2214 is trumped by the specific provision in K.S.A. 59-1504 that mandates when and how attorney fees are paid.

Review of the judgment of the Court of Appeals in 47 Kan. App. 2d 374, 277 P.3d 1163 (2012). Appeal from Marshall District Court; FRED S. JACKSON, judge. Opinion filed December 12, 2014. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

*David P. Troup*, of Weary Davis, L.C., of Junction City, argued the cause and was on the briefs for appellant Janet Pralle.

*Joseph A. Knopp*, of Knopp and Bannister, P.A., of Manhattan, argued the cause and was on the brief for appellees Roger Strader and Regina Crowell.

*John McNish*, of Bolton & McNish, LLC, of Marysville, argued the cause and was on the briefs for appellee Eric Strader.

*William C. O'Keefe*, of Seneca, was on the brief for appellee Estate of Betty Jo Strader.

The opinion of the court was delivered by

NUSS, C.J.: Per the general rule stated in K.S.A. 59-617, no will is effective unless a petition is filed for probate of the will within 6 months of the date of the testator's death. The Marshall County District Court nevertheless admitted Betty Jo Strader's will to probate when it was found in her attorney's office more than 4 years after her death and court intestacy proceedings were well underway. One of Betty Jo's five adult children, Janet Pralle, appealed the admission of the will.

A panel of the Court of Appeals affirmed the district court, relying upon its interpretation of K.S.A. 59-618, which is an exception to K.S.A. 59-617's general rule. We granted Janet's petition for review, in part to resolve differences in interpretation of the statutory exception by various panels of the Court of Appeals.

3

We agree with Janet that a required element of the statutory exception allowing late filing is for the will to have been "knowingly withheld" from the probate court. And here the will was not knowingly withheld. So we reverse the decisions of the district court and the panel. We also grant Janet's request for her attorney fees and costs incurred on appeal to our court.

FACTS

Betty Jo Strader died in Blue Rapids, Kansas, on October 19, 2006, leaving an estate valued at approximately $1.3 million. She is survived by five adult children: sons Roger Strader, Alan Strader, and Eric Strader, and daughters Janet Pralle and Regina Crowell.

Betty Jo and her husband D. Gerald Strader properly executed separate mutual wills on August 28, 1985. Gerald died soon after, and his estate passed to Betty Jo. Her will devises the real and personal property related to the family oil well drilling business to Roger, Alan, and Eric, who run the enterprise. It also divides the family farm and any residual real and personal property among all five children equally.

About a week after Betty Jo's death in October 2006, her family began searching for her will. They searched her home and safety deposit box. They also contacted the law firm of Galloway, Wiegers, and Brinegar, P.A., the successor to the firm that prepared Betty Jo's will in 1985. But they could not find an executed copy of her will.

On December 27, 2006, Eric then filed a petition for letters of administration in Marshall County District Court alleging Betty Jo had died intestate. Jerry Weis was appointed administrator and granted letters of administration by the magistrate judge. Over Janet's objection, the magistrate also granted Weis' petitions to pay a $10,000

4

employment bonus to Eric out of the estate and to privately sell some of the estate's personal and real property to Eric and Roger.

Janet appealed to the district court, which dismissed the case for lack of jurisdiction. But a panel of the Court of Appeals reversed and remanded for a ruling on the merits. *In re Estate of Strader*, No. 101,195, 2010 WL 1882146 (Kan. App. 2010) (unpublished opinion).

On remand, the district court ordered that all of the estate's property be sold at public auction. But before the auctions could occur, around February 16, 2011, Galloway, Wiegers, and Brinegar, P.A., contacted Bill O'Keefe—who had replaced Weis as administrator. The firm informed O'Keefe that Betty Jo's executed will had been found in a lock box at its office "[d]uring a recent review of old files and general housekeeping."

Within the week, Eric filed petitions with the court to probate Betty Jo's will and to stay the public auctions. He argued her will should be admitted to probate under K.S.A. 59-618's exception to the 6-month time limit in K.S.A. 59-617. Janet objected, arguing the will could not be admitted to probate because it was filed 52 months after Betty Jo's death—well beyond the 6-month deadline. Janet further argued K.S.A 59-618's exception to this time limit did not apply because Betty Jo's will was not the type covered by that statute, *i.e.*, it was not a "knowingly withheld" will.

After a hearing, the district court admitted Betty Jo's will to probate, relying on *In re Estate of Tracy*, 36 Kan. App. 2d 401, 140 P.3d 1045 (2006). There, a panel of the Court of Appeals interpreted K.S.A. 59-618 to allow the probate of a lost will 3 days after the 6-month time limit in K.S.A. 59-617 had expired. The *Tracy* panel stated:

"The legislative intent of K.S.A. 59-618 is to submit every legally executed will to probate. It imposes a penalty on those who wrongfully withhold a will, but also provides an exception for innocent beneficiaries, allowing them to submit a will to probate beyond the 6-month time limit if they do so within 90 days after having knowledge of the existence of the will." 36 Kan. App. 2d 401, Syl. ¶ 10.

After quoting this language, the district court opined: "[T]hat's exactly what we are confronted with in this case, and that decision [*Tracy*] disposes of the issues raised." It also found that Betty Jo's will had not been knowingly withheld from probate, but stated that "such a finding is not necessary as to an innocent beneficiary under K.S.A. 59-618." Accordingly, the will was admitted, and Janet appealed.

Before the Court of Appeals panel, Janet advocated a plain reading of K.S.A. 59-618, urging reversal of the district court's admission of the will to probate because the will had not been knowingly withheld. Her responsive siblings, together with administrator O'Keefe, generally argued that K.S.A. 59-618 does not require the knowing withholding of a will. Moreover, they claimed any innocent beneficiary can use the statute to admit a will to probate when more than 6 months have passed since the testator's death.

Relying on *Tracy,* a majority of the panel affirmed the district court. *In re Estate of Strader*, 47 Kan. App. 2d 374, 383, 277 P.3d 1163 (2012). But Chief Judge Richard D. Greene dissented, relying principally on an opinion he had authored for another panel: *In re Estate of Seth*, 40 Kan. App. 2d 824, 196 P.3d 402 (2008). The *Seth* panel interpreted K.S.A. 59-618 to require a knowing withholding before a will can be admitted to probate after the 6-month time limit has expired. *Strader*, 47 Kan. App. 2d at 381-83 (Greene, J., dissenting).

6

In light of the apparent conflict between *Tracy* and *Seth,* this court granted Janet's petition for review pursuant to K.S.A. 20-3018(b), establishing our jurisdiction under K.S.A. 60-2101(b).

ANALYSIS

Issue 1: *The district court erred by admitting Betty Jo's will to probate under K.S.A. 59-618 after the 6-month time limit in K.S.A. 59-617 had expired because her will was not knowingly withheld.*

Janet argues that the plain language of both K.S.A. 59-617 and K.S.A. 59-618 easily resolves this issue. She contends Betty Jo's will should not have been admitted to probate because it clearly was not admitted within the 6-month time limit set out in K.S.A. 59-617. She additionally contends K.S.A. 59-618's exception allowing late filing could not apply because its essential condition had not been met: the district court held no one knowingly withheld the will.

Eric counters that the panel majority correctly identified and applied the public policy of this state favoring the admission to probate of every legally executed will. Accordingly, he argues that K.S.A. 59-618 should be interpreted to protect innocent beneficiaries, whether a will has been knowingly withheld or not.

Eric also disputes that the district court specifically found the will was not knowingly withheld from probate. But that court expressly made this finding. Additionally, Eric has not preserved this issue for our review because he failed to file the required cross-appeal. See K.S.A. 2013 Supp. 60-2103(h) (appellee must file cross-appeal to obtain review of adverse rulings); *Cooke v. Gillespie*, 285 Kan. 748, 755, 176 P.3d 144 (2008) (same). Therefore, we do not consider this argument.

7

*Standard of review and principles of statutory interpretation*

Statutory interpretation is a question of law over which this court exercises unlimited review. *Vontress v. State*, 299 Kan. 607, 611, 325 P.3d 1114 (2014). During our review of legislative enactments:

> "'"[T]he fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. When language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there." *Zimmerman v. Board of Wabaunsee County Comm'rs,* 289 Kan. 926, Syl. ¶ 3, 218 P.3d 400 (2009).' *State v. Hopkins,* 295 Kan. 579, 581, 285 P.3d 1021 (2012)." *State v. Holt*, 298 Kan. 469, 474, 313 P.3d 826, (2013).

Regarding this fundamental rule, we have also explained: "A statute's language is our paramount consideration because '"the best and only safe rule for ascertaining the intention of the makers of any written law is to abide by the language they have used."' *Gannon v. State*, 298 Kan. 1107, 1143, 319 P.3d 1196 (2014) (quoting *Wright v. Noell*, 16 Kan. 601, 607, 1876 WL 1081 [1876])." *State v. Looney*, 299 Kan. 903, 906, 327 P.3d 425 (2014). And in abiding by the language the legislature has used, we assign common words their ordinary meaning. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009).

*Discussion*

K.S.A. 59-617 establishes the general rule we must first consider to help resolve this case. The statute provides in its entirety: "No will of a testator who died while a resident of this state shall be effectual to pass property unless a petition is filed for the

probate of such will within six months after the death of the testator, except as hereinafter provided."

Simply put, K.S.A. 59-517 functions as a statute of limitations prohibiting the admission of a will to probate more than 6 months after a testator's death. *In re Estate of Reed*, 157 Kan. 602, 607-08, 142 P.2d 824 (1943) (holding the then 1-year time limitation in G.S. 1941 Supp. 59-617 to be a statute of general limitation); *Tracy,* 36 Kan. App. 2d at 406 (K.S.A. 59-617 is a statute of limitations). We have held a virtually identical provision to be "clear and unambiguous." *In re Estate of Colyer*, 157 Kan. 347, 351, 139 P.2d 411 (1943) (affirming district court's denial of application to probate a will that was found almost 3 years after testator's death under the then 1-year time limitation).

By contrast, K.S.A. 59-618 is a savings provision that contains the probate code's only exception to the general 6-month rule contained in K.S.A. 58-617. The savings provision provides in relevant part:

> "Any person who has possession of the will of a testator dying a resident of this state, or has knowledge of such will and access to it for the purpose of probate, and knowingly withholds it from the district court having jurisdiction to probate it for more than six months after the death of the testator shall be liable for reasonable attorney fees, costs and all damages sustained by beneficiaries under the will who do not have possession of the will and are without knowledge of it and access to it. *Such will may be admitted to probate as to any innocent beneficiary on petition for probate by any such beneficiary, if such petition is filed within 90 days after such beneficiary has knowledge of such will and access to it . . . ."* (Emphasis added.) K.S.A. 59-618.

The issue of when a will may be admitted to probate under K.S.A. 59-618 after the expiration of the 6-month time limit in K.S.A. 59-617 turns on the use of the word "such"

9

at the beginning of the second sentence. Eric first contends "such" was not intended to limit K.S.A. 59-618 to situations where an innocent beneficiary can establish fault.

Specifically, he urges us to ignore the word, arguing we "must give effect to the legislative intent even though words, phrases, or clauses at some point in the statute must be omitted or inserted." See *Board of Ness County Comm'rs v. Bankoff Oil Co.*, 265 Kan. 525, 538, 960 P.2d 1279 (1998). But this rule of construction is subordinate to the plain language rule and generally applies only when the meaning of a statute is unclear in the context of an entire act. See, *e.g.*, *State ex rel. Topeka Police Dept. v. $895.00 U.S. Currency*, 281 Kan. 819, 827, 133 P.3d 91 (2006) (determining it was not necessary to omit or insert terminology in the challenged statutory provisions because the entire act *in pari materia* clarified their meaning).

Both legal and lay dictionaries alike reveal the plain meaning of "such." It means "1. Of this or that kind . . . ; 2. That or those; *having just been mentioned . . . .*" (Emphasis added.) Black's Law Dictionary 1570 (Deluxe 9th ed. 2009); see also American Heritage Dictionary of the English Language 1285 (1971) (providing several definitions, including "1. Of this or that kind . . . . 2. *Being the same as that which has been last mentioned or implied. . . .* 3. Being the same in quality or kind . . . . 4. Being the same as something implied but left undefined or unsaid . . . .") (Emphasis added.)

And applying this ordinary meaning, K.S.A. 59-618 can legitimately be read only one way: "such will" in the second sentence refers to the will "having just been mentioned" in the first sentence. In other words, it means a will that has been knowingly withheld from probate for more than 6 months after the death of a testator by a person who has possession of the will or knowledge of and access to it.

Under this plain reading, a will that has not been knowingly withheld from probate, *e.g.*, a will that simply has been lost or misplaced, is not admissible under K.S.A. 59-618 after the 6-month time limit in K.S.A. 59-617 has expired. See *Looney*, 299 Kan. at 906 ("""the best and only safe rule for ascertaining the intention of the makers of any written law is to abide by the language they have used""" [citing *Gannon*, 298 Kan. at 1143; quoting *Wright*, 16 Kan. at 607]).

The panel majority recognized—and Eric agrees—that K.S.A. 59-618 could be read this way. But the majority ultimately rejected the plain meaning in favor of a policy-based, result-oriented approach:

> "We readily concede that the statute might also be interpreted to allow for the late filing only if a withheld will is involved. The placing of this provision in a section which discusses withheld wills and the use of 'such will,' perhaps referring only to withheld wills, weighs into that conclusion.
>
> "But, we must also note that as far as any innocent beneficiary is concerned, the knowing withholding of a will, or the misplacing of the will, have the same result in that the beneficiary's rights under the will are defeated. Allowing late filing for either reason is logical and does not absolutely depart from the language of the relevant statute."
> *Strader*, 47 Kan. App. 2d at 382-83.

Stated plainly, the majority glosses over the use of the word "such." It instead favors a result that protects all innocent beneficiaries, regardless of the time that has passed after the testator's death. It reasons that both the knowing withholding and the misplacing of a will defeat an innocent beneficiary's rights under the will, so allowing for late filing for either reason is logical. *Strader*, 47 Kan. App. 2d at 383.

11

In reaching its conclusion in this case, the majority relied on the *Tracy* panel's interpretation of K.S.A. 59-618. Specifically, *Tracy* provided that K.S.A. 59-618 reflects the legislative intent to: "(1) submit every legally executed will to probate, (2) penalize people who wrongfully withhold wills, and (3) except innocent beneficiaries from the 6-month time limit." *Strader*, 47 Kan. App. 2d at 380-81; see *Tracy*, 36 Kan. App. 2d at 408 (citing L. 1943, ch. 213, sec. 2).

Chief Judge Greene argued in dissent that the majority failed to properly construe K.S.A. 59-617 and 59-618 or "honor[] clear legislative policy regarding the statutory time bar for the probate of wills." *Strader*, 47 Kan. App. 2d at 383. He referenced his opinion for the unanimous panel in *Seth,* which held the statutory term "such will" is "a will that has been knowingly withheld from probate." 40 Kan. App. 2d at 828. We agree with Chief Judge Greene and further note the *Tracy* panel's analysis of K.S.A. 59-618 is incomplete.

The *Tracy* panel reversed the district court's denial of the admission of a will to probate under K.S.A. 59-617 and K.S.A. 59-618 when the petition was filed 6 months and 3 days after the testator's death and had not been knowingly withheld. The district court determined the knowing withholding of a will was a condition that must occur before an innocent beneficiary can submit a will to probate outside the 6-month time limit. 36 Kan. App. 2d at 407.

The executor appealed, raising two issues. First, she argued that as a statute of limitations, K.S.A. 59-617 is an affirmative defense that must be raised by a party who objects to a petition for probate. The *Tracy* panel agreed and held that the lower court erred when it raised K.S.A. 59-617 *sua sponte* to deny the executor's petition for probate. 36 Kan. App. 2d at 406.

12

Second, the executor argued the district court's strict interpretation of K.S.A. 59-618 "'conflicts with the goals of equity and good policy.'" 36 Kan. App. 2d at 406. Again, the panel agreed, opining that the lower court's literal interpretation of K.S.A. 59-618 was "contrary to the underlying intent of the probate code." 36 Kan. App. 2d at 408.

To discern this underlying intent of the code, the *Tracy* panel principally relied on *In re Estate of Harper*, 202 Kan. 150, 446 P.2d 738 (1968). At issue in *Harper* was whether the will's beneficiaries had the right to proceed under a family settlement agreement without admitting the will to probate. The *Harper* executor argued the agreement violated public policy because it was an illegal agreement to suppress the will.

This court agreed, holding the family could not proceed under the family settlement agreement in lieu of probate. 202 Kan. at 152-55, 160. The *Harper* court reasoned that K.S.A. 59-618, 59-620 (repealed L. 1995, ch. 273, sec. 2) (allowing will to be deposited with probate court before death of testator), coupled with 59-621 (imposing duty on person with custody of will after testator's death to deliver it to the court) together "express the legislative intent that the will of every person shall be offered for probate. They decree there is a clear public policy in the establishment of every legally executed will. That policy requires the probate of a will, not its suppression or to withhold it from probate." 202 Kan. at 158.

Describing the *Harper* holding, the *Tracy* panel explained: "The court found that the *statutes relating to the probating of wills* express the legislative intent that the will of every person be offered for probate." (Emphasis added.) 36 Kan. App. 2d at 408. But this blanket statement simply overlooks the *Harper* court's acknowledgment of the time limit contained in K.S.A. 59-617. Even though timeliness was not at issue in *Harper*, this court clearly recognized that K.S.A. 59-617 limits the time in which a will may be offered for probate, stating:

13

"In this state no will shall be effectual to pass real or personal property unless it shall have been duly admitted to probate (59-616), and *application for probate is required to be made within one year after the death of the testator*. (59-617.) It is the policy of our law that all wills shall be delivered to the probate court having jurisdiction as soon after the death of the testator as is possible." (Emphasis added.) 202 Kan. at 157-58.

The *Tracy* panel's failure to discuss the statute of limitations is not surprising, given it held K.S.A. 59-617 did not apply under its case facts because the statute was not raised as an affirmative defense by a party. But in the present case, the statutory time limit cannot be ignored—even under *Tracy*—because Janet specifically argued in her response to Eric's petition for probate that K.S.A. 59-617 bars the will's admission.

In short, the *Strader* majority correctly recognized this state's long-favored policy of probating all legally executed wills. But it failed to appreciate this policy is qualified by the legislative intent clearly expressed in K.S.A. 59-617, *i.e.*, that wills be probated within a certain time of the testator's death. The majority's interpretation of K.S.A. 59-618 would allow virtually *any* will to be admitted to probate after the 6-month statute of limitations has run, essentially making K.S.A. 59-617 unnecessary. See *Gannon*, 298 Kan. at 1146 ("'"There is a presumption that the legislature does not intend to enact useless or meaningless legislation."'").

Accordingly, the Court of Appeals' contrary holdings in *Strader* and *Tracy* are specifically disapproved. And to the extent Eric's counsel has interpreted the *Seth* opinion as a softening of this "knowingly withholding" requirement, *e.g.*, a careless withholding, that interpretation is also specifically disapproved.

14

Issue 2:  *Janet is entitled to reasonable appellate attorney fees under Supreme Court Rule 7.07(b).*

Janet timely moved this court to grant her attorney fees and costs incurred on appeal in the amount of $20,444.40. Because there obviously is no lower court determination for us to consider, there is no appellate standard of review.

We begin our independent determination by acknowledging that in Kansas attorney fees cannot be awarded absent statutory authority or agreement. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 939, 135 P.3d 1127 (2006). But this court may award attorney fees for services on appeal if the district court had authority, *e.g.*, by statute, to award attorney fees. Supreme Court Rule 7.07(b) (2013 Kan. Ct. R. Annot. 67). And K.S.A. 59-1504 requires that the district court award attorney fees and necessary expenses to any person who successfully opposes the probate of a will. *In re Estate of Haneberg*, 270 Kan. 365, 379-80, 14 P.3d 1088 (2000). Such an award is payable out of the estate and must be "just and proper." K.S.A. 59-1504.

Eric implies Janet acted in bad faith because she testified she was "going to fight it all out at the end." Accordingly, he argues it would be inequitable to award attorney fees out of the estate under K.S.A. 59-2214, which requires the district court to tax the costs of probate against the estate "unless it appears that it would be unjust and inequitable to do so."

Attorney fees may be taxed as costs against the estate. See *In re Estate of Hjersted*, 285 Kan. 559, 590, 175 P.3d 810 (2008). But the general provision in K.S.A. 59-2214 concerning the payment of probate costs is trumped by the specific provision in K.S.A. 59-1504 that mandates when and how attorney fees are to be paid. See *In re N.A.C.*, 299 Kan. 1100, 1107, 329 P.3d 458 (2014) (specific statute controls over general statute). And because K.S.A. 59-1504 requires a court to award attorney fees to a party

15

who successfully opposes the probate of a will, Eric's suggestion that Janet should not be awarded attorney fees because she acted in bad faith is irrelevant. The only question we must determine is whether the amount requested is reasonable.

An award of attorney fees under K.S.A. 59-1504 is compensatory, not penal. *In re Estate of Robinson*, 236 Kan. 431, 435, 690 P.2d 1383 (1984). And appellate courts are experts on the reasonableness of attorney fees. *Johnson*, 281 Kan. at 959.

Rule 7.07(b)(2)(C) requires a party seeking attorney fees on appeal to file an affidavit that specifies the factors considered in determining the reasonableness of the fee under the Kansas Rules of Professional Conduct (KRPC) 1.5(a) (2013 Kan. Ct. R. Annot. 503). These factors are:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent." KRPC 1.5(a).

16

Eric does not specifically reference any of these factors in his response to Janet's motion. Instead, he generally argues the amount requested is "staggering." He also argues it "greatly exceeds the amount of fees incurred by other counsel that have been involved in the case since the beginning of the proceeding." But he has failed to provide any citation to the record or an affidavit to support this allegation. See *Southwestern Bell Tel. Co. v. Beachner Constr. Co.*, 289 Kan. 1262, 1275, 221 P.3d 588 (2009) (party making argument on appeal has burden to designate record sufficient to present its points and establish its claims).

Nevertheless, we hold Janet is not entitled to the entire amount requested. Her counsel's affidavit and itemized statement showing the work done, time spent, and expenses incurred on her appeal include services performed in connection with the proceedings not only before this court but also the Court of Appeals. Neither the record on appeal nor the Clerk of the Appellate Courts' electronic filing system indicates that Janet filed a motion under Rule 7.07(b) following oral argument in the Court of Appeals.

Accordingly, we conclude Janet has failed to preserve her right to the fees incurred on appeal to the panel. See *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 167, 298 P.3d 1120 (2013) (party must timely file a Rule 7.07[b] motion in order to preserve the right to appellate attorney fees); see also *Evans v. Provident Life & Accident Ins. Co.*, 249 Kan. 248, 266, 815 P.2d 550 (1991) ("[I]t would be inappropriate in petition for review cases to determine attorney fee requests on appellate work before us prior to the Court of Appeals determining attorney fee requests for appellate work before it."); *Johnson,* 281 Kan. at 959 (attorney fee requests made to Court of Appeals and then Supreme Court).

17

The affidavit and itemized statement show that Janet's attorney spent 29.6 hours on her appeal to this court at $250 per hour and advanced $746.90 in related expenses. We find this reasonable after considering the applicable factors listed in KRPC 1.5(a). See *Lee Builders, Inc., v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 137 P.3d 486 (2006) (reducing fees requested). So we grant Janet's motion for appellate attorney fees in the amount of $8,146.90 and order that amount to be paid to her out of the estate. See K.S.A. 59-1504.

Judgment of the Court of Appeals is reversed. Judgment of the district court is reversed.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 105,964 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.