IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,895

In the Interest of T.S.,
A Minor Child.

SYLLABUS BY THE COURT

K.S.A. 2016 Supp. 38-2273 does not provide the right to appeal a denial of a motion to terminate parental rights.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 7, 2017. Appeal from Sedgwick District Court; DANIEL T. BROOKS, judge. Opinion filed June 22, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Appeal dismissed for lack of jurisdiction.

*Grant A. Brazill*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Shannon L. Cooper*, of Andover, was on the briefs for appellant/cross-appellee.

*Jennifer M. Hill*, of McDonald Tinker PA, of Wichita, argued the cause, and *Erin Sommer Good*, of the same firm, was with her on the briefs for appellee/cross-appellant.

The opinion of the court was delivered by

STEGALL, J.:  In this expedited appeal from a child in need of care (CINC) proceeding under the Kansas Code for Care of Children (Revised Code), K.S.A. 2016 Supp. 38-2201 et seq., we consider whether a Kansas appellate court has jurisdiction to review a denial of a motion to terminate parental rights under K.S.A. 2016 Supp. 38-2273(a). In this case, a grandfather moved to terminate the parental rights of his grandson's parents. The district court appointed the grandfather as the child's permanent

1

custodian but declined to terminate the father's parental rights. The Court of Appeals then dismissed the grandfather's appeal for lack of jurisdiction. Because the plain language of K.S.A. 2016 Supp. 38-2273(a) does not provide the right to appeal the district court's order denying the grandfather's motion, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Whether we have jurisdiction is a question of law that, in this case, hinges on statutory interpretation. *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010). Given the narrow question of law presented, we recite only those facts necessary for a basic understanding of the case.

T.S. was born while his mother (Mother) was incarcerated in 2008. Mother was released from prison a few weeks after his birth. At first, the two lived briefly with Mother's family in Oklahoma. Then they lived with T.S.'s father (Father) in Wichita for a short time. Finally, Mother and T.S. moved in with T.S.'s maternal grandfather (Grandfather) and his wife (collectively, Grandparents) in Wichita. Except for a few months, T.S. has lived with Grandparents his entire life.

Mother and T.S. lived with Grandparents until April 2013 when Mother allegedly participated in a robbery of Grandparents' home. Grandfather promptly filed a CINC action and requested temporary custody of T.S., citing concerns with Mother's and Father's criminal conduct. The Sedgwick County District Court subsequently granted Grandfather temporary custody of T.S. It also ordered Mother and Father to submit to drug testing and limited them to supervised visitation with T.S. Both parents signed achievement plans with the goal to reintegrate with T.S.

The district court held an adjudication hearing. Mother stipulated to the allegations in the CINC petition and waived her right to a hearing. After hearing evidence from the remaining parties, the court found T.S. was a child in need of care. The court voiced concerns about Father's criminal history, drug use, and mistreatment of women but noted Father had made some positive progress. In the end, the court ordered that T.S. remain in Grandfather's custody and expanded Father's visitation rights.

Shortly after that, Grandfather moved for findings of unfitness and termination of Mother's and Father's parental rights or, in the alternative, for an order appointing Grandfather as T.S.'s permanent custodian. Grandfather alleged, among other things, that Father was violent toward Mother, abused drugs and alcohol, taught T.S. to fight, and failed to establish a healthy lifestyle for T.S.

A few months later, the district court held a disposition hearing and ordered that T.S. remain in Grandfather's custody. At that time, the court found it was in T.S.'s best interests to postpone the hearing on the motion to terminate parental rights. In the meantime, the court held permanency hearings but kept T.S. in Grandfather's custody.

The court held a hearing on Grandfather's motion in February and March 2015. Mother had consented to the appointment of a permanent custodian for T.S. beforehand. After hearing extensive evidence, the court ruled that Grandfather proved by clear and convincing evidence that Father is unfit. As a result, the court appointed Grandfather as T.S.'s permanent custodian. Yet the court declined to terminate Father's parental rights, finding it "would not be in the child's best interests."

Father appealed the finding of unfitness, and Grandfather cross-appealed the decision not to terminate Father's parental rights. The Court of Appeals affirmed the district court's finding of Father's unfitness and appointment of Grandfather as permanent

3

custodian. *In re T.S.*, No. 114,895, 2017 WL 2896086, at *7-8 (Kan. App. 2017) (unpublished opinion). These rulings are not before us because Father did not petition for review. See *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 172, 298 P.3d 1120 (2013) ("A party aggrieved by a decision of the Court of Appeals on a particular issue must seek review in order to preserve the matter for Kansas Supreme Court review.").

In ruling on Grandfather's cross-appeal, the panel first examined whether it had jurisdiction to review a denial of a motion to terminate parental rights under K.S.A. 2016 Supp. 38-2273(a). The panel ordered the parties to show cause why Grandfather's cross-appeal should not be dismissed for lack of jurisdiction under *In re A.S.*, 52 Kan. App. 2d 173, 364 P.3d 1203 (2015), which held the same statute "does not provide the right to appeal the *denial* of a motion to terminate parental rights." 52 Kan. App. 2d 173, Syl. ¶ 3. Grandfather claimed *In re A.S.* was wrongly decided, and the panel retained the appeal through oral argument. *In re T.S.*, 2017 WL 2896086, at *8.

Ultimately, the panel dismissed Grandfather's cross-appeal for lack of jurisdiction under the plain language of K.S.A. 2016 Supp. 38-2273(a). 2017 WL 2896086, at *10. It reasoned:

> "K.S.A. 2016 Supp. 38-2273(a) states: 'An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights.' It clearly provides for appellate review of any of five different types of orders in CINC proceedings: (1) temporary orders of custody, (2) orders of adjudication, (3) disposition orders, (4) orders finding a parent unfit, and (5) orders terminating parental rights. The statute does not provide appellate jurisdiction for *any* order *regarding* the termination of parental rights, only an order which terminates parental rights. Thus, we agree with the statement in *In re A.S.*: 'Nowhere in the statute does it provide the right to appeal when a motion to terminate parental rights has been denied.' 52 Kan. App. 2d at 177. The plain language unambiguously omits any such right.

4

" . . . [A]s the court noted in *In re A.S.*, the plain language of K.S.A. 2016 Supp. 38-2273(a) is unambiguous and whether policy concerns dictate there be appellate review from orders not to terminate parental rights is a question for the legislature." 2017 WL 2896086, at *10.

We granted Grandfather's petition for review of the dismissal.

ANALYSIS

Grandfather claims the Court of Appeals erred when it dismissed his appeal for lack of jurisdiction because the plain language of K.S.A. 2016 Supp. 38-2273(a) permits him to appeal the order denying his motion to terminate Father's parental rights. He argues the phrase "any order of . . . termination of parental rights" means any order *regarding* termination, including one that denies termination. K.S.A. 2016 Supp. 38-2273(a). We disagree and affirm the Court of Appeals.

Whether jurisdiction exists is a question of law subject to unlimited review. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015).

"Appellate jurisdiction is defined by statute; the right to appeal is neither a vested nor a constitutional right. The only reference in the Kansas Constitution to appellate jurisdiction demonstrates this principle, stating the Kansas Supreme Court shall have 'such appellate jurisdiction as may be provided by law.' Kan. Const., art. 3, § 3. Under this provision, this court may exercise jurisdiction only under circumstances allowed by statute; this court does not have discretionary power to entertain appeals from all district court orders." *Svaty*, 291 Kan. at 609-10.

Questions of statutory interpretation are likewise subject to unlimited review. *In re A.D.T.*, 306 Kan. 545, 551, 394 P.3d 1170 (2017). The fundamental rule of statutory

5

interpretation is that legislative intent governs if it can be discerned. We begin this inquiry with the plain language of the statute. *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 875-76, 317 P.3d 770 (2014). Indeed, "statutory language is an appellate court's paramount consideration because the best and only safe rule for ascertaining the intention of the makers of any written law is to abide by the language they have used." *In re Estate of Strader*, 301 Kan. 50, Syl. ¶ 3, 339 P.3d 769 (2014); *Wright v. Noell*, 16 Kan. 601, 607 (1876). When, as here, "a statute is plain and unambiguous, this court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it." *Cady v. Schroll*, 298 Kan. 731, 738-39, 317 P.3d 90 (2014); see *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 (2017) ("we read the statutory language as it appears, without adding or deleting words").

The Revised Code's jurisdiction statute, K.S.A. 2016 Supp. 38-2273(a), states: "An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." Grandfather is an "interested party" who may appeal certain orders. See K.S.A. 2016 Supp. 38-2202(m) ("interested party" includes "the grandparent of the child"). The statute creates five categories of appealable orders in a CINC case. *In re N.A.C.*, 299 Kan. 1100, 1109, 329 P.3d 458 (2014). Grandfather claims an order denying a motion to terminate parental rights fits within the last category: "termination of parental rights." To this end, he argues that "any order of . . . termination of parental rights" means any order *regarding* the termination of parental rights. And so an order declining to terminate parental rights would fall under that umbrella.

Conspicuously absent from K.S.A. 2016 Supp. 38-2273(a) is any mention of, say, an order denying or involving the termination of parental rights. And of course, we cannot add words to the statute. See *Gray*, 306 Kan. at 1294; see also *Murphy v. National Collegiate Athletic Assn.*, 584 U.S. ___, 138 S. Ct. 1461, 1486, ___ L. Ed. 2d ___ (2018)

6

(Thomas, J., concurring) ("courts cannot take a blue pencil to statutes"). So Grandfather hangs his hat on the word "any," arguing it expands the meaning of a termination order to include any related order. This argument presumes that "any" modifies "order of . . . termination of parental rights" in the first place. For purposes of this opinion, we assume the same. Even so, we conclude that an order of "termination of parental rights" means what it plainly says—an order ending parental rights, not leaving them intact. See Black's Law Dictionary 1700 (10th ed. 2014) (defining "termination" as "[t]he act of ending something"). The adjective "any" in no way alters this meaning.

As used in K.S.A. 2016 Supp. 38-2273(a), "any" is an indefinite adjective that quantifies the thing it modifies but does not change its substantive meaning. See Webster's New World College Dictionary 64 (5th ed. 2014) (defining the adjective "any" as "some, no matter how much or how little" and "without limit"); see also *United States v. Gonzales*, 520 U.S. 1, 5, 117 S. Ct. 1032, 137 L. Ed. 2d 132 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.' Webster's Third New International Dictionary 97 [1976].").

This concept was perhaps best illustrated in *Price v. Time, Inc.*, 416 F.3d 1327 (11th Cir. 2005). There, the Eleventh Circuit considered whether Alabama's shield statute protected a reporter from being compelled to reveal a confidential source for a magazine article. The outcome depended on whether the plain meaning of the phrase "any newspaper" included magazines. As the court succinctly explained:

> "While the scope of the 'any' adjective is plenty wide to sweep in all of the noun category that follows, it ordinarily does not sweep beyond that category. The term 'any dog' does not mean 'any dog or cat' unless a cat is a dog. Likewise, the term 'any newspaper' does not mean 'any newspaper or magazine,' unless a magazine is a newspaper. So, we are back where we started, looking for the plain meaning of the word 'newspaper.'" 416 F.3d at 1336.

7

See *United States v. Stock*, 728 F.3d 287, 295 (3d Cir. 2013) ("[T]he adjective 'any' can broaden the scope of the noun . . . to its natural boundary, but not beyond."); see also *The Late Show with Stephen Colbert* (CBS television broadcast March 21, 2018) (when asked by show host Stephen Colbert, "Is a hot dog a sandwich?" Colbert's guest—Justice Ruth Bader Ginsburg—answered, "You tell me what a sandwich is, and then I'll tell you if a hot dog is a sandwich.").

The same reasoning applies here. Because the adjective "any" does not expand the category it modifies, we arrive back where we started—with the plain meaning of the phrase "order of . . . termination of parental rights." K.S.A. 2016 Supp. 38-2273(a). This means an order that ends parental rights, and nothing more. Put simply, the order Grandfather appeals from is a cat, not a dog.

In *In re N.A.C.*, we held post-termination orders issued under K.S.A. 2012 Supp. 38-2264(h) are not subject to appellate review because they do not fall within one of the five categories of appealable orders in a CINC case. *In re N.A.C.*, 299 Kan. at 1120-21. In so holding, we reasoned:

> "'We simply cannot create a new category of appeals so that appeals like this one may be heard. Nor should we. The legislature has worked hard to create a comprehensive Code for Care of Children. It has attempted to balance the protection of the rights of children, parents, and other interested parties . . . . We respect the choice the legislature has made here.'" 299 Kan. at 1121 (quoting *In re A.F.*, 38 Kan. App. 2d 742, 746, 172 P.3d 63 [2007]).

We likewise refuse to create a new category of CINC appeals where the Legislature has declined to do so. See *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361

8

P.3d 504 (2015) ("When a statute is plain and unambiguous, a court must give effect to its express language, rather than determine what the law should or should not be.").

Thus, the panel below correctly held that K.S.A. 2016 Supp. 38-2273(a) "does not provide appellate jurisdiction for *any* order *regarding* the termination of parental rights, only an order which terminates parental rights," and whether Grandfather's appeal should be heard is a question for the Legislature. *In re T.S.*, 2017 WL 2896086, at *10; see *In re A.S.*, 52 Kan. App. 2d at 177. Accordingly, we hold K.S.A. 2016 Supp. 38-2273(a) does not provide the right to appeal a denial of a motion to terminate parental rights and affirm the dismissal of Grandfather's appeal for lack of jurisdiction.

As a final matter, Grandfather also argues that dismissing this appeal would deny him due process. But Grandfather neither cites supportive authority for this argument nor demonstrates why we should adopt it otherwise. As we have stated, "Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority, is akin to failing to brief an issue." *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002). Because Grandfather failed to brief this issue, we consider it waived or abandoned. 275 Kan. at 15.

Affirmed.

\* \* \*

JOHNSON, J., dissenting:  I dissent. I read the plain language of K.S.A. 2016 Supp. 38-2273(a) as broadly encompassing any order affecting the temporary custody or disposition of a child in a CINC case. Cf. *In re N.A.C.*, 299 Kan. 1100, 1123, 329 P.3d 458 (2014) (Johnson, J., dissenting).

The majority's strict textualism rationale is founded on the theory that the language of K.S.A. 2016 Supp. 38-2273(a) "creates five categories of appealable orders in a CINC case." Slip op. at 6 (citing *In re N.A.C.*, 299 Kan. at 1109). But, of course, the statute says no such thing. "[N]one of the critical terms in 38-2273(a)—temporary custody, adjudication, disposition, finding of unfitness, termination of parental rights—is statutorily defined." 299 Kan. at 1123 (Johnson, J., dissenting). Accordingly, where statutory terms are not defined therein, we ordinarily employ the construction rule of "giving common words their ordinary meanings." See, e.g., *Cady v. Schroll*, 298 Kan. 731, 738, 317 P.3d 90 (2014). In that vein, a denial of a motion to terminate parental rights affects the disposition in a CINC case, because adoption is precluded by the denial. Likewise, it affects the temporary custody of the child, because the parent retains the right to have extended visitation with the child or to reinstitute a reintegration plan.

Here, the district court's "split-the-baby" ruling—making grandfather a permanent custodian because father is unfit, yet refusing to terminate the unfit father's parental rights—might well be in the best interests of the child. On the other hand, it might irreparably harm the child. I cannot read the language of K.S.A. 2016 Supp. 38-2273(a) as manifesting a legislative intent to make the latter circumstance incapable of correction by a higher court. Indeed, the Legislature has directed us to liberally construe the Kansas Code for Care of Children to effect the best interests of the child, making "the safety and welfare of a child . . . paramount in all proceedings under the code." K.S.A. 2017 Supp. 38-2201(b)(1). Such liberal construction mandates appellate jurisdiction in this case.

10