NOT DESIGNATED FOR PUBLICATION

No. 115,418

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE ESTATE OF
BETTY JO STRADER, DECEASED.

MEMORANDUM OPINION

Appeal from Marshall District Court; WILLIAM B. ELLIOTT, judge. Opinion filed May 19, 2017. Affirmed in part, reversed in part, and remanded with directions.

*David P. Troup*, of Weary Davis, L.C., of Junction City, for appellant.

*William C. O'Keefe*, of O'Keefe Law Office, of Seneca, for appellee.

Before MCANANY, P.J., MALONE, J., and STUTZMAN, S.J.

*Per Curiam*:  The bitter battle between siblings in these probate proceedings following the death of their mother, Betty Jo Strader, led to various trips to our appellate courts. The dispute has finally devolved to the sole remaining issue of attorney fees. The district court granted fees to some lawyers working on the matter but denied some of the fees requested for the lawyer working for the challenger in these proceedings. The appeal of those orders brings the matter to us.

*History of the Proceedings*

The contestants are children of Gerald and Betty Jo Strader. Gerald and Betty Jo executed mutual wills in 1985. Gerald died shortly thereafter, and his estate passed to Betty Jo. Betty Jo died in October 2006. She was survived by five adult children:  Roger Strader, Alan Strader, Janet Pralle, Eric Strader, and Regina Crowell. It appears that the

1

sons and Regina are on one side, and Janet is on the other. Janet apparently had been estranged from her mother for a number of years.

The family enterprise was an oil well drilling business which was run by sons Roger, Alan, and Eric. In her will Betty Jo devised the drilling business and the associated real and personal property to her sons. The family farm and any residual real and personal property was devised in equal shares to the five children. Betty Jo's estate was initially valued at about $1.3 million.

Unfortunately, after an extended search, the family was unable to locate Betty Jo's will, so in December 2006 Eric filed a petition for letters of administration. In February 2007, over Janet's objections of a conflict of interests, the court granted letters of administration to Jerry Weis, a banker.

Weis engaged Darrell Spain, an attorney, to perform legal services for the estate. Weis and Spain entered into a written agreement that noted that the heirs had agreed to pay Weis an administrator's fee equaling 3% of the estate's gross value but not more than $12,000. Spain was to charge $120 per hour for his legal services rendered in the administration of the estate.

In May 2007, Weis petitioned for approval to pay Eric an annual employment bonus of $10,000 for operating the family drilling business. Janet opposed the bonus to her brother. Over Janet's objections, the district magistrate judge granted Weis' motion to pay the bonus. Janet appealed to the district court judge.

Meanwhile, in August 2007, Eric and Roger submitted written offers to purchase some of the estate assets. Weis petitioned to approve these sales, but Janet offered to purchase the assets for $1 higher than Eric's and Roger's bids.

2

In April 2008, the district judge held a hearing on Janet's appeal from the district magistrate judge's decision to authorize the $10,000 bonus to Eric. At that time Weis hired attorney Rodney Olsen, an experienced litigator, to assist him in representing the estate.

In May 2008, the district court judge dismissed Janet's appeal from the district magistrate judge's decision because she failed to post an appeal bond, as ordered. Janet appealed to our court.

In 2010, our court considered Janet's appeal in *In re Estate of Strader*, No. 101,195, 2010 WL 1882146, at *1-3 (Kan. App. 2010) (unpublished opinion) (*Strader I*). We determined that Janet's failure to post an appeal bond did not deprive the district court of jurisdiction and remanded the matter to the district court. 2010 WL 1882146, at *1-3.

In June 2010, the district court ordered all the estate property to be sold at auction.

In November 2010, the district court allowed Weis to resign as administrator due to his poor health and appointed attorney William O'Keefe to take his place. The following month, O'Keefe petitioned for reimbursement for Olsen's attorney fees.

In December 2010, the court approved a public auction to dispose of all the estate's property. The court decided to defer to the final settlement hearing any ruling on fees for Weis as administrator.

In February 2011, before the public auction could be held, Eric discovered Betty Jo's will and petitioned for its admission into probate.

In March 2011, the district court admitted the will, and Janet once again appealed to our court. That month, O'Keefe notified Spain that his legal services were no longer needed. On March 25, 2011, Spain submitted his bill for attorney fees to O'Keefe.

In 2012, a divided panel of our court affirmed the district court's admission of Betty Jo's late-discovered will in *In Re Estate of Strader*, 47 Kan. App. 2d 374, 277 P.3d 1163 (2012), *rev'd* 301 Kan. 50, 339 P.3d 769 (2014) (*Strader II*), and Janet petitioned for Supreme Court review.

In 2014, the Supreme Court granted Janet's petition for review and reversed the decisions of the Court of Appeals and the district court in *In re Estate of Strader*, 301 Kan. 50, 55-60, 339 P.3d 769 (2014) (*Strader III*). The Supreme Court declared that because Betty Jo's will was not intentionally withheld but simply misplaced, it was too late for the district court to admit the will to probate. 301 Kan. at 57.

In February 2015, on remand, the district court authorized a public auction, and O'Keefe sold the estate's real property for $1,401,500 and personal property for $104,325.50.

In April 2015, O'Keefe petitioned for final settlement of the estate. In the petition, O'Keefe sought reimbursement of attorney fees for Spain's, Olsen's, and his own legal services incurred in representing the estate. He also requested fees for Weis, the prior administrator. Janet separately petitioned for her own attorney fees.

In December 2015, after a November 2015 evidentiary hearing, the district court denied fees for administrator Weis but granted O'Keefe's requests for attorney fees, including those incurred in litigating the two appeals. The district court partially granted Janet's petition for attorney fees.

4

Now, on appeal, Janet challenges the district court's attorney fees awards in three respects. First, she contends the district court lacked authority to award attorney fees for Spain's and Olsen's services. Second, she argues that Weis and O'Keefe failed to preserve claims for appellate attorney fees and, therefore, the district court erred in awarding them. Third, she asserts the district court erred in partially denying her petition for attorney fees.

*Spain's Attorney Fees*

Janet challenges the district court's order granting O'Keefe attorney fees for Spain's legal services. First, she argues the district court lacked statutory authority to award fees to O'Keefe. As an alternative, she contends, even if the district court had proper authority, its award was not just and reasonable.

■ *Authority to Award Fees*

With respect to her first argument, Janet asserts that Weis was responsible for Spain's attorney fees and only Weis could apply to the district court for reimbursement of those fees. Because Weis never sought payment or reimbursement of these fees he incurred in administering the estate, the district court did not have statutory authority to enter an award for Spain's fees and expenses.

A Kansas court may not award attorney fees absent statutory authority or an agreement by the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013) (*Snider III*); *Rogers v. ALT-AM JV*, 52 Kan. App. 2d 213, 219, 364 P.3d 1206 (2015). Whether a court has the authority to award attorney fees is a question of law over which we exercise unlimited review. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013).

5

An administrator "has a duty to collect and preserve the assets of a decedent's estate and in so doing he [or she] may employ counsel to assist" in the estate's administration. *In re Murdock's Estate*, 213 Kan. 837, 852, 519 P.2d 108 (1974). Under K.S.A. 59-1717, an administrator may recover all "necessary expenses incurred in the execution" of the estate, including reasonable attorney fees. Further, a fiduciary may apply for an allowance for attorney fees "at any time during administration." See *In re Estate of Bertrand*, 188 Kan. 531, 537, 363 P.2d 412 (1961).

The district court appointed Weis as the estate's administrator in February 2007. Weis hired Spain to perform legal services for the estate. Over approximately the next 3 years, Spain provided legal services and related expenses in the amounts of $24,680 and $193.70. In November 2010, the district court discharged Weis due to his poor health and appointed O'Keefe in his stead. In its written order, the district court reserved determination of "[a]ny fees due Mr. Weis, as administrator, [until] final settlement."

When O'Keefe was appointed the substitute administrator, Weis did not file a motion with the district court seeking reimbursement for Spain's attorney fees, very possibly because of the court's order deferring the issue of fees to the final settlement. Instead, after he was appointed administrator, O'Keefe sent Spain a letter informing him that his legal services were no longer needed and, thereafter, O'Keefe asked Spain to submit an invoice for his attorney fees. Spain submitted his bill to O'Keefe. According to the parties, Weis died from his illness before final settlement of the estate. When O'Keefe petitioned for final settlement, he attached Spain's invoice to the petition and requested that the district court reimburse him for Spain's attorney fees. The district court granted O'Keefe's request and directed full payment of Spain's attorney fees.

Janet argues Spain had to pursue payment of his attorney fees directly from Weis, as the person who originally retained him. She contends that Weis should have petitioned

6

for reimbursement of Spain's fees and that the district court lacked authority to grant Spain's fees or to award them to O'Keefe.

We can view the facts surrounding this issue in one of two ways: first, as O'Keefe being Spain's agent to pursue the payment of fees on Spain's behalf; or second, as O'Keefe, the successor administrator, assuming Weis' obligation to pay Spain's fees.

In *Bertrand*, our Supreme Court recognized an exception to the general rule that the administrator is charged with seeking the reimbursement of fees. That exception arises when attorney fees are *allegedly* uncollectable from the estate's representative. The Supreme Court explained that in such cases "the attorney is generally entitled to be *subrogated* to the rights of the representative by proceeding in equity and may compel the representative to enforce such claim against the estate for the benefit of such attorney." *Bertrand*, 188 Kan. at 542-43.

Here, Weis did not seek reimbursement for Spain's fees when he was replaced by O'Keefe. Then Weis died before the final settlement of the estate. So Spain could not collect his fees from Weis, and there is no indication that he could have collected them from Weis' estate. Thus, when Spain sent his fee statement to O'Keefe, he apparently looked to O'Keefe to act on his behalf to enforce for him his claim to fees at the time of the final settlement of the estate. And O'Keefe undertook that task for Spain when he sought reimbursement for Spain's fees at the final settlement. Under the circumstances with Weis having passed away, we view this as a proper means for O'Keefe to seek for Spain the payment of Spain's fees and expenses.

Viewed another way, as O'Keefe assuming Weis' obligation to pay Spain's fees, the transaction could be viewed as a novation in which O'Keefe assumed Weis' obligation for Spain's fees and undertook to seek reimbursement for Spain's fees by asking for Spain's bill and submitting it to the court for approval and for an order for fees. Spain

7

agreed to this arrangement by submitting his bill to O'Keefe. There is no indication Spain ever made a claim against Weis personally or against his estate. The arrangement between Spain and O'Keefe can be viewed as a substitute for the original agreement between Spain and Weis. Under this new arrangement, O'Keefe became the substitute obligor for Weis with respect to the payment of Spain's fees. The only novation element lacking is Spain's formal release of Weis, the original obligor. See *Davenport v. Dickson*, 211 Kan. 306, 310, 507 P.2d 301 (1973). But it seems rather unrealistic to think that Spain, whose legal fees ultimately were paid in full when O'Keefe submitted Spain's bill to the court for approval, retained a claim for fees against the estate of the now deceased Weis. *Davenport* posits the propriety of an implied release of the original debtor, in this case Weis. "There must be an agreement expressed or implied to do so." 211 Kan. at 311. We believe such an implied release can be found under these circumstances.

In any event, however we view the transaction, we are satisfied that the district court had authority to consider and order reimbursement for Spain's fees and expenses.

■ *Reasonableness of Fees*

As an alternative, Janet contends that even if the district court had authority to award attorney fees, Spain's attorney fees were not just or reasonable. We review the reasonableness of the district court's award for any abuse of discretion. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 81, 350 P.3d 1071 (2015). In doing so we consider the eight factors set out in Rule 1.5(a) of the Kansas Rules of Professional Conduct. See *Snider*, 297 Kan. at 169. Those eight factors are:

> "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

8

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent." Rule 1.5(a) (2017 Kan. S. Ct. R. 292).

Janet's attack on the reasonableness of Spain's fees is based on three arguments: (1) Spain erroneously supported the contention that the district court lacked jurisdiction to hear Janet's appeal from the district magistrate's ruling, a contention that was rejected on appeal; (2) Weis was denied fees as administrator, so his lawyer also should not be paid; and (3) Spain abandoned his role as attorney for an independent fiduciary.

- *Spain's Support of Faulty Jurisdiction Claim*

With respect to Janet's first argument, she directs us to the May 2008 hearing at which the court determined it lacked jurisdiction to hear Janet's appeal of the district magistrate's order. She contends that Spain was present and supported Eric's position that an appeal bond was mandatory. But it does not appear that O'Keefe sought attorney fees for Spain related to the district court's dismissal of Janet's appeal. Besides, the district court raised the matter of an appeal bond at a pretrial conference in April 2008. At that hearing, Spain did not comment on the requirement of an appeal bond. When Janet did not post an appeal bond, Eric's personal attorney, not Spain, filed a motion to dismiss Janet's appeal. Spain did not respond to the dismissal motion on the estate's behalf. Spain attended another pretrial conference in May 2008 at which the district court addressed Eric's motion. But Spain was there to participate in the other issues to be addressed at the pretrial conference, not Eric's motion which was advanced by Eric's personal attorney.

We find no support for Janet's first argument.

9

*- Weis Was Denied Fees So Spain Should Be Denied Fees*

With respect to Janet's second argument, she objected to O'Keefe's request for Spain's attorney fees on the grounds that had Spain properly advised Weis regarding his duties in selling real property at a private sale, the parties could have avoided the subsequent litigation, including the two appeals. She recognized that Spain provided legal services to the estate but asserted the "bulk" of his services did not benefit the estate.

After an evidentiary hearing, the district court denied Weis an administrator's fee. Janet argues the district court's decision granting fees for Spain is incongruent because Weis made all administrative decisions with Spain's knowledge and approval. She maintains the district court could not find Weis' fee was not just and reasonable and, at the same time, find Spain's fee was just and reasonable.

The district court found Weis' administrator's fee was unjust and unreasonable for three reasons: (1) Weis failed to secure an independent appraisal before petitioning for approval to privately sell estate property, even after Janet requested one; (2) Weis paid Eric an employment bonus before the appeal time had run; and (3) Weis failed to apply for fees for his work as administrator and failed to present any evidence to support the requested fee.

Regarding the court's first reason for denying a fee to Weis, under K.S.A. 59-2307, "[b]efore the personal representative sells or leases any real estate at private sale, such real estate shall be appraised at its full and fair value." The court was critical of Weis' performance because he *petitioned* the district court for approval to privately sell estate property without first obtaining an appraisal of the property, citing K.S.A. 59-2307. But our Probate Code does not require an independent appraisal prior to the representative's petition for authority to conduct a private sale.

10

Under K.S.A. 59-2303(a), a petition to privately sell real estate need only "state the facts constituting the reasons for the application and describe the real estate to be sold. . . . The petition also *may* state the name of the prospective purchaser and the terms of the proposed sale, and *may* include a request for approval of named appraisers and for confirmation of the proposed transaction." (Emphasis added.) If a court approves a request for a private sale, the court must "direct that the real estate . . . not be sold for less than 3/4 of the appraised value." K.S.A. 59-2305(b). The court's "order for sale . . . shall remain in force until terminated by the court, but no private sale or lease shall be made unless the real estate or the leasehold interest in the real estate has been appraised or reappraised within six months preceding the sale or lease." K.S.A. 59-2305(e).

Here, Weis petitioned for approval to privately sell the estate property to Eric and Roger. Janet offered to purchase the real property for $1 higher than Eric's and Roger's bids. After an initial hearing, the district magistrate continued the matter. Before the district magistrate's ruling on Weis' petition, Janet appealed to the district court judge. At this point, the issue of an appeal bond arose, which led the parties to our court in *Strader I* and the remand of the matter to the district court for further proceedings. On remand, Weis and the heirs agreed to obtain an appraisal of the estate's property, and a three-person appraisal committee valued the property. Before any further action to sell the property, Weis resigned as administrator due to his poor health and O'Keefe took over and discharged Spain because O'Keefe was a lawyer and did not need Spain's assistance.

Based on these facts, it is clear that there was no misconduct by Spain in his representation of the administrator. To the extent the district court found Weis' performance to be inadequate, that inadequacy cannot be attributed to Spain.

Regarding the court's second reason for denying a fee to Weis—that Weis paid Eric an employment bonus before the appeal time had run—the issue is moot because, at the time of final settlement, the district court reduced Eric's distribution by $10,000, the

11

amount of the annual bonus he previously received. Moreover, we find no evidence that Spain played any part in a premature distribution of the bonus.

Regarding the court's third reason for denying a fee to Weis—that he failed to apply for fees for his work as administrator and failed to present any evidence to support a requested fee—this reason is unrelated to the reasonableness of Spain's fees.

Based on these facts, none of the bases for the court's denial of an administrator's fee to Weis constitutes a basis for denying fees to Spain.

- *Spain Abandoned His Role as an Independent Fiduciary*

In her third argument, Janet asserts that Spain "abandoned his role as attorney for an independent fiduciary by siding with some of the heirs." She claims Spain sided with her siblings and "conspir[ed]" against her.

An administrator's duties include the duty to act as a fiduciary for all interested parties and to pursue the decedent's interests. *Estate of Draper v. Bank of America*, 288 Kan. 510, 532, 205 P.3d 698 (2009). At the November 2015 hearing, Spain testified he commenced the probate proceedings, attempted to marshal the assets in a forthright and expeditious manner, and tried to liquidate the assets in an appropriate manner. Spain further testified he proceeded in good faith and did the best he could "under difficult circumstances."

Janet does not argue any specific instance in which Spain abandoned his duties as an administrator. Spain testified that it was not his primary concern to sell the estate's property to family members. Although Spain supported a position taken by some of the heirs, that fact alone does not demonstrate a conspiracy against Janet or his failure to carry out an administrator's fiduciary duty to all interested parties.

12

Janet has failed to establish that the district court's award of Spain's fees was an award with which no reasonable person could agree. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). The district court did not abuse its discretion in reimbursing O'Keefe for Spain's fees and expenses.

*Olsen's Attorney Fees*

Janet argues the district court erred in granting Olsen's request for attorney fees. She makes two arguments: (1) the payment of Olsen's fees suffers from the same jurisdictional infirmity as Spain's fees; and (2) a substantial portion of Olsen's legal services related to *Strader I* and Weis failed to preserve a claim for Olsen's fees by a timely motion for fees under Supreme Court Rule 7.07(b) (2017 Kan. S. Ct. R. 50). Janet does not contend that the amount of Olsen's fees was unreasonable.

For Janet's first argument, we use the same review standard we used in analyzing the court's authority for authorizing the payment of Spain's fees. Here, as in her argument against Spain's fees, Janet argues that the district court lacked authority under K.S.A. 59-1717 to allow Olsen's attorney fees.

In April 2008, Weis hired Olsen, an experienced litigator, to assist him in representing the estate. After Weis was replaced by O'Keefe and after Weis died, O'Keefe sought reimbursement for Olsen's fees at the time of the final settlement of the estate. Without repeating the analysis above with respect to Spain's fees, we adopt that analysis in concluding that the district court had jurisdiction to consider Olsen's fees for his work at the district court level.

13

The same cannot be said for Olsen's claim for $11,230.56 in fees for his appellate work, Janet's second argument. Supreme Court Rule 7.07(b) (2017 Kan. Sup. Ct. R. 51) provides:

"(1)     **Generally**. An appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees.

"(2)     **Motion for Attorney Fees**. A motion for attorney fees on appeal must be made under Rule 5.01 and be filed not later than 14 days after oral argument. If oral argument is waived, the motion must be filed not later than 14 days after the day argument is waived or the date of the letter assigning the case to a non-argument calendar, whichever is later. An affidavit must be attached to the motion specifying:

"(A)     the nature and extent of the services rendered;

"(B)     the time expended on the appeal; and

"(C)     the factors considered in determining the reasonableness of the fee."

In *Evans v. Provident Life & Accident Ins. Co.*, 15 Kan. App. 2d 97, 113, 803 P.2d 1033 (1990), *aff'd in part, rev'd in part* 249 Kan. 248, 815 P.2d 550 (1991), the plaintiff moved for appellate attorney fees, and this court remanded to the district court for a determination of those fees. On review, the Kansas Supreme Court held that our decision was contrary to Rule 7.07(b). The court explained, "[c]ivil appellate attorney fee awards are to be determined by the appellate court hearing the appeal." 249 Kan. at 265. Thus, "[m]otions for attorney fees incurred before the Court of Appeals should be determined by the Court of Appeals." 249 Kan. at 265.

More recently, in *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 298 P.3d 1120 (2013) (*Snider III*), the Kansas Supreme Court revisited Rule 7.07(b). The *Snider* court clarified "the procedure for seeking and awarding appellate attorney fees is established in Rule 7.07(b). . . . Rule 7.07(b) applies to all requests for attorney fees related to an appeal," whether authorized by statute or by an agreement of the parties. 297

14

Kan. 162-63. Regardless of the circumstances, a party must file a timely Rule 7.07(b) motion to preserve the right to appellate attorney fees.

Here, Weis did not file a timely Rule 7.07(b) motion, nor did anyone else, seeking reasonable attorney fees for Olsen's services in representing the estate's interests in *Strader I.* Thus, Weis failed to preserve the administrator's right to appellate attorney fees. O'Keefe's later request for fees was neither timely nor addressed to the proper court.

But as Janet acknowledges in her appellate brief, Olsen rendered legal services in connection with trial proceedings. She does not challenge the reasonableness of those fees. Those fees incurred at the district court level did not have to be preserved by a Rule 7.07(b) motion. Thus, we must remand to the district court to separate out the fees and expenses for Olsen's services at the district court level and consider the reasonableness of those fees and expenses incurred before the district court.

*O'Keefe's Attorney Fees*

In approving the O'Keefe's fee as administrator, the district court found:

> "Mr. O'Keefe's request for fees and expenses is just and reasonable. As a tree in the wind he bowed with each new family dispute and problem. In a neutral and effective fashion he dealt with the Strader siblings, their attorneys and others involved in these proceedings. He employed appraisers, auctioneers and accountants to assist him; he hired others to prepare the personal property for sale. His actions resulted in a successful conservation, management and liquidation of estate resources. . . .
>    . . . .
> "In sum, O'Keefe discharged his fiduciary responsibilities. No credible evidence was presented to indicate Mr. O'Keefe acted with anything other than a full consideration of his fiduciary obligation. Absolutely no evidence established that Mr. O'Keefe failed to act in a prudent, diligent and business-like manner in order to obtain the best prices for estate resources. To the contrary, under extremely difficult circumstances and in spite of

15

sometimes unreasonable demands made upon him by the heirs, he exercised admirable qualities of patience."

Janet does not contest the district court's order for the payment of O'Keefe's fees as administrator of the estate. But she contends that the district court erred in allowing O'Keefe to reimburse himself from estate proceeds for appellate attorney fees incurred in *Strader II.* She argues that O'Keefe did not preserve the right to appellate attorney fees by filing a timely Rule 7.07(b) motion. In his appellate brief, O'Keefe does not address the application of Rule 7.07(b) to him.

As an alternative, Janet complains O'Keefe's involvement in *Strader II* was unnecessary and divisive.

As in the case of Olsen's appellate attorney fees, whether a court has the authority to award attorney fees is a question of law over which we have unlimited review. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013).

Our analysis of Olsen's fees on appeal applies equally here. O'Keefe failed to preserve the right to appellate attorney fees incurred in *Strader II* by filing a timely Rule 7.07(b) motion. Therefore, we must set aside the district court's order reimbursing O'Keefe for his legal services on appeal in *Strader II* and remand for the district court to consider O'Keefe's fees without including his fees on appeal. With this, Janet's alternative argument against the payment of O'Keefe's appellate fees is now moot.

*Fees for Janet's Attorney*

Finally, Janet challenges the district court's partial denial of her request for attorney fees and expenses. The district court awarded her total fees and expenses of $10,751.98 for the work of her attorneys at the district court level with respect to her

16

challenge to the admission of Betty Jo's will. She does not contest the adequacy of this award. Further, the district court ordered O'Keefe as administrator to pay appellate attorney fees of $8,146.90 and expenses of $746.90 ordered by the Supreme Court in *In re Estate of Strader*, 301 Kan. 50, 63, 339 P.3d 769 (2014) (*Strader III*).

But Janet claims the district court erred in finding she failed to preserve a claim for appellate attorney fees incurred in *Strader I*. She also claims the district court erred in declining to award her trial attorney fees incurred in opposing Eric's petitions for annual employment bonuses and Weis' petition for approval to privately sell estate property to Eric and Roger.

■ *At the Appellate Level*

Janet complains the district court erred in denying her request for appellate attorney fees incurred in *Strader I* on the grounds that she failed to file a timely Rule 7.07(b) motion with our court. She argues that Rule 7.07(b) only applies when the district court has authority to award fees, and she was seeking fees under K.S.A. 59-1504, which predicates an award of fees on her having "in good faith and for good cause, successfully prosecut[ed] . . . any other action for the benefit of the ultimate recipients of the estate." Thus, she contends that because *Strader I* dealt with procedure—whether she was required to post an appeal bond before the district court could hear her appeal from the district magistrate's decision—and not the merits of her appeal from the district magistrate's decision, it was impossible at the time of the decision in *Strader I* to determine whether the district court had authority to award her attorney fees under K.S.A. 59-1504, a prerequisite for a request for fees under Rule 7.07. This is because "it would have been impossible to tell at that time whether [her] action would be successful or whether it would [ultimately] benefit the . . . recipients of the estate." Thus, Janet argues that her failure to timely file a Rule 7.07(b) motion in *Strader I* not did preclude her recovery of appellate attorney fees before the district court.

17

The Kansas Supreme Court rejected a similar argument in *Snider III*. There, Snider was insured under a policy that provided coverage for contractor's equipment. After tools and equipment were stolen from Snider's storage facility, he filed a claim which his insurer denied. He sued the insurer in the district court, but the district court entered summary judgment against him. He appealed and this court reversed and remanded with directions to enter judgment in Snider's favor and to determine the amount of attorney fees Snider should be awarded under K.S.A. 40-908. *Snider v. American Family Mut. Ins. Co.*, No. 101,202, 2009 WL 2902588, at *15 (Kan. App. 2009) (unpublished opinion) (*Snider I*). On remand, the district court ordered fees which Snider considered inadequate, so he appealed again to this court, where we determined that the district court erred in including in its fee award the fees for the appellate work of Snider's lawyer in the first appeal because Snider's lawyer had not sought fees under Rule 7.07(b). *Snider v. American Family Mut. Ins. Co.*, 45 Kan. App. 2d 196, 205-08, 244 P.3d 1281 (2011) (*Snider II*). The Supreme Court took the matter up on review. See *Snider III*, 297 Kan. 157.

On review, Snider argued that the Court of Appeals did not have the authority under Rule 7.07(b) to award appellate attorney fees so a Rule 7.07(b) motion would have been futile. But our Supreme Court held that "these potentially futile motions are procedurally required to advance a party's position and to secure the relief the party seeks." *Snider III*, 297 Kan. at 167. The Supreme Court explained, "even though the district court would enter the final judgment at the conclusion of further proceedings on remand, the Court of Appeals was authorized to render a decision on the reasonableness of appellate attorney fees and that decision would be controlling in the district court proceedings." 297 Kan. at 166. The Supreme Court concluded that, "if a party would be entitled to appellate attorney fees under a statute or contract upon prevailing on appeal, then the party must timely file a Rule 7.07(b) motion in order to preserve the right to those fees." 297 Kan. 167.

18

Under the rule announced in *Snider III*, Janet should have filed a Rule 7.07(b) motion to preserve her claim for appellate attorney fees regardless of whether she ultimately would receive them. If Janet had appropriately filed a Rule 7.07(b) motion, this court could have made a preliminary judgment as to the reasonableness of fee request. But because Janet failed to timely file a Rule 7.07(b) motion, the district court did not err in denying her request for appellate attorney fees incurred in *Strader I*.

■ *At the Trial Level*

Janet contends the district court abused its discretion in denying her request for attorney fees incurred at the trial court level opposing Eric's petition for annual employment bonuses and opposing Weis' petition for approval to privately sell some of the estate's property to Eric and Roger. She concedes that although the district court's reasons may have warranted a reduced award, they did not warrant a total denial of fees on these two issues.

To restate our standard of review, when the district court has the authority to grant attorney fees, its decision is reviewed for any abuse of discretion. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 81, 350 P.3d 1071 (2015). A district court abuses its discretion when it bases its decision on an error of fact or law or when its decision is so unreasonable that no reasonable person would agree with it. *Snider III*, 297 Kan. at 169.

To analyze the district court's ruling denying these fees, it is helpful to revisit the facts and the court rulings relating to the private versus public sale issue and Eric's employment bonus issues.

After Weis submitted an initial inventory and valuation of the estate, he petitioned for approval to pay Eric an annual employment bonus of $10,000 for "services rendered

19

to [Betty Jo] and her estate." He also sought approval to sell some of the estate's real and personal property to Eric and Roger, who had submitted written offers which exceeded 75% of the fair market value as provided in the initial valuation. Janet opposed both the bonus to Eric and the private sale to her brothers. These matters were set for hearing before the district magistrate. On the day of the hearing, Janet submitted to the court a letter offering to buy the property subject to Eric's and Roger's bids for $1 more than each of their bids. But her bid was contingent upon her being able to pay a portion of the bid price out of her share of the final disbursement of the estate. Under Janet's scenario, the estate would benefit $2 from the private sale, but payment would be deferred, at least in part, until the entire estate was closed and assuming that Janet's share of the remaining assets of the estate would be sufficient to satisfy this obligation.

After a hearing on both the private sale and the bonus issues, the district magistrate granted Weis' request to pay Eric a $10,000 employment bonus and signed an order to this effect. The court continued the hearing on Weis' petition for approval to privately sell estate property to Eric and Roger. In a dispute that ensued over the wording of the journal entry regarding the continuance, Janet's attorneys argued: "The court did not approve a sale of the real state to Eric Strader." The dispute was submitted to the district magistrate under Supreme Court Rule 170 (2017 Kan. S. Ct. R. 216), but the judge apparently did not resolve the conflict or file a signed journal entry.

Janet appealed to the district court judge, stating that she was appealing the authorization of the sale of property to "one of decedent's heirs." This was in spite of the fact that her attorneys had already acknowledged that the request for a private sale had not been decided. Nevertheless, on appeal before the district court judge Janet continued to challenge the private sale of estate property to Eric and Roger.

When Janet appealed, she did not post an appeal bond. After some discovery, the district court judge determined that filing an appeal bond was required by K.S.A. 59-

20

2401. Janet's counsel did not advise the court that the statute had changed in 2006 and no longer required an appeal bond. Further, Janet argued the false assertion that the district magistrate had approved the private sale and that a dismissal of her appeal for lack of a bond "would result in a $180,000 windfall for Eric." She contended that she did not have sufficient funds to post a bond. When Janet failed to file a bond, Eric's personal attorney moved to dismiss the appeal, which the district court judge granted.

Janet appealed this ruling, and our court reversed in *Strader I*. In doing so, our court considered only the bond issue. This appeal substantially placed on hold any further probate proceedings for about 1 year and 8 months. On remand, the district court was unable to find any signed journal entry approving the private sales, and none of the parties could produce one. With respect to Eric's $10,000 bonus, the ruling on that matter was not taken up until the hearing on the final settlement of the estate.

The parties agreed to obtain an appraisal of the estate's property, and, later, O'Keefe petitioned for approval to publicly auction the property. Janet opposed O'Keefe's petition to sell the estate property at auction. The district court later observed on the final settlement of the estate:

> "The only disposition Janet seemed to approve was the conditional sale of real estate and personal property to herself for $2.00 more than Eric's and Roger's offers, and Janet's offers were made during the same general time framework when she was asserting that she didn't have the financial ability to pay the premium on a $30,000 commercial appeal bond."

When Betty Jo's will was found, proceedings were further delayed while the admissibility of the will was litigated in this court and our Supreme Court for about 3 years and 8 months. During this period, O'Keefe sought to liquidate the estate's assets to avoid the ongoing depreciation of the personal property, but the heirs did not agree to a sale.

At the final settlement of the estate Janet requested $59,669 in attorney fees and $1,300.91 in related expenses incurred in opposing the private sale of estate property to her brothers. The district court denied Janet's request. Citing K.S.A. 59-1504, the district court found Janet's challenge to the private sales did not benefit the ultimate recipients of the estate. The court found that Janet's appeal of the dismissal of her appeal of the district magistrate's "phantom non-decision was not for the benefit of the ultimate recipients of the estate, but for Janet's benefit."

The court reasoned that because most of the heirs supported the private sale and Janet's appeal cost the estate substantial attorney fees and time delays in litigating the appeal bond issue, our court's decision on the matter benefited only Janet. It relieved her of the obligation to post a bond but never got to the merits of the appeal, which was predicated on the error of the magistrate judge in a ruling that was never made.

The district court also found Janet did not act in good faith and that it would be inequitable "to force [Janet's] siblings to bear the burden of paying for her imprudent actions in not researching current law [on appeal bonds] and in appealing a fictional order." But Janet argued that by challenging the private sale of estate property to Eric and Roger, she substantially increased the estate's value. Eric's bid in August 2007 was for $431,200. Later at public auction, the same property sold for a total of $1,401,500, an increase of almost $1 million due to the rise in the value of farm land over the years. The district court noted that even if there had been such an inflation in land values, the increase would have been offset by (1) all the expenses litigating the matter, (2) the depreciation in value of some of the estate's personal property, (3) the lost time of family members spent in litigation, (4) the loss of use of money from the estate caused by the delay of 8 or 9 years in closing the estate, and (5) additional taxes incurred while the estate remained open.

The district court determined in the exercise of its discretion that fees were not appropriate on the issues of Eric's bonuses and the private sale of assets because of (1) Janet's failure to ensure there was an appealable order approving the private sales before appealing to the district court, and (2) her opposition to the private sales and then later objecting to a public auction which would thwart her effort to buy the estate property for only $2 more than the proposals made by Eric and Roger, with payment deferred to the final settlement.

The court also noted the failure of Janet's attorneys to verify a pleading, which the court conceded to be "nitpicking." But the court noted:

> "[T]he court is being called upon to exercise discretion in determining whether to award attorney fees to [Janet's attorneys] or [Janet], and it seems only appropriate that when considering that request, the court can note that [Janet's attorneys] committed the same defects in the form [of their] pleading that they had so vociferously criticized in others."

Finally, the district court noted Janet should shoulder some of the responsibility for the circumstances that led to the appeal in *Strader I* because Janet's attorney never alerted the district court of its error and therefore invited the error.

The district court concluded:

> "Having found that [Janet's] actions in prosecuting or defending the actions to oppose private sales of real estate and personal property were not in good faith and for good cause and that they did not benefit the ultimate recipients of the estate, this court exercises discretion and refuses to allow expenses and attorney's fees for those proceedings at the district court level."

On the matter of Eric's $10,000 bonus, Janet argued to the district court that "'[b]ut for (her) opposition, those fees undoubtedly would have been approved.'" The district

court rejected that notion as "pure conjecture." "Not in this court" said the district court judge.

The district magistrate approved Eric's $10,000 bonus for 2006, but as far as we can tell from the record, the district court judge hearing the appeal from the magistrate's decision did not resolve the bonus issue on remand following *Strader I* until the hearing to approve the final settlement years later in 2015. Janet's appeal in *Strader I* did not address the merits of her claims, so our court did not give any guidance to the district court on how the issue of Eric's bonus should be resolved. At that time the district court rejected Eric's claim for the 2006 bonus and ordered that his share of the estate should be reduced by the $10,000 bonus he received. Eric had withdrawn his bonus claim for 2007 without any explanation. Janet presumes that but for her intervention the district court would have approved Eric's bonus for 2006 and Eric would have successfully pursued his claim for a bonus in 2007. The district court rejected Janet's assumption that it served as nothing more than a rubber stamp approving such petitions. Janet offers nothing beyond this speculation to support the linkage between her opposing Eric's bonuses and those bonus requests being rejected or withdrawn.

In this appeal we recognize that K.S.A. 59-1504 usually governs whether a district court is authorized to grant attorney fees in probate proceedings. Although the statute sets forth several ways to recover fees, only K.S.A. 59-1504's second paragraph is applicable in this appeal. The pertinent language states:

> "Any heir at law or beneficiary under a will who, in good faith and for good cause, successfully prosecutes or defends any other action for the benefit of the ultimate recipients of the estate may be allowed his or her necessary expenses, in the discretion of the court, including a reasonable attorney's fee." K.S.A. 59-1504.

24

Under the statute's plain language, a party must demonstrate four elements to recover attorney fees: (1) the party is an heir at law or beneficiary under a will; (2) the party has exercised good faith and had a good cause for incurring the claimed attorney fees; (3) the party is successful in his or her action; and (4) the action benefits the ultimate recipients of the estate. See *In re Estate of Gardiner*, 29 Kan. App. 2d 158, 163, 23 P.3d 902 (2001). But once these elements are established, an award of fees is still discretionary with the district court. As K.S.A. 59-1504 states, with such a showing fees and expenses "may be allowed."

Here, the district court denied Janet's fee request on two bases: the failure of her actions to benefit the estate or Betty Jo's heirs and Janet's lack of good faith. There is a certain element of disingenuousness in Janet's argument that she opposed the private sale to her brothers in order to obtain a higher return for the estate from a public sale when she herself offered to buy the same property at a private sale for a mere $2 more. The court adequately explained how any increase in the value of the real estate was occasioned by unnecessary delays and offset by other disadvantages for the heirs. Besides, any claimed increase in the value of the estate was not the result of the work Janet expended on behalf of the estate, but a fortuitous and unrelated increase in real estate values. Finally, Janet's appeal to the district court judge on this issue was premised on the claim that the district magistrate judge erred in approving the private sale, when no such order had been made.

We find support in the record for this analysis and find no abuse of discretion in denying fees on these bases.

Following oral argument on this appeal, Janet moved pursuant to Supreme Court Rule 7.07(b)(1) for attorney fees incurred in this appeal. Based on the resolution of the issues above, we conclude that it would not be appropriate to award fees for this appeal, and we deny Janet's motion.

25

Affirmed in part, reversed in part, and remanded for further proceedings.