No. 124,100

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.P.,
A Minor Child.

SYLLABUS BY THE COURT

1.

Service of process by restricted mail is different from service by certified mail.

2.

K.S.A. 2020 Supp. 38-2267(b) authorizes service of the notice of a hearing concerning the termination of parental rights by return receipt delivery, which includes service by certified mail. The law does not restrict the delivery of the notice to the person served or otherwise require that individual to personally sign for its delivery.

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed March 18, 2022. Affirmed.

*Robert D. Campbell*, of Campbell Law Office, P.A., of Atchison, for appellant natural father.

No appearance by appellee.

Before WARNER, P.J., CLINE, J., and RACHEL L. PICKERING, District Judge, assigned.

WARNER, J.: This appeal follows the district court's termination of the appellant's parental rights. The appellant—whom we call Father in this opinion—argues that the notice he received by certified mail concerning the termination hearing was legally defective because someone other than him signed for its receipt. But Kansas law only

1

requires the mailed service of a notice in these circumstances to be followed by a return receipt, not a restricted delivery that could only be acknowledged by Father. Thus, the district court correctly found that service by certified mail was sufficient, and we affirm its judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2019, the State petitioned the district court to find A.P. was a child in need of care (CINC). The petition alleged that A.P.'s Mother was using drugs and had abandoned A.P., who was then about three years old—leaving A.P. with her extended family and not returning. A.P. had been passed between Mother's relatives and friends as their work schedules and health allowed. The petition did not mention A.P.'s Father or allege anything related to his care of A.P.

Even though the petition did not mention Father, he received notice of the pending June 2019 CINC adjudication and attended that hearing in person with his attorney. At the hearing, he entered a no-contest statement in response to the allegations in the petition. The district court found that A.P. was a child in need of the State's care and ordered her into custody of the Kansas Department for Children and Families.

From early in the case, Mother showed no interest in retaining her parental rights, so the court's reintegration plan focused on Father and Stepmother. Initially, the main concerns surrounding reintegration were Father's drug use, Father's and Stepmother's inconsistent compliance with drug testing requirements, and various other legal issues concerning both Father and Stepmother. Despite an early positive drug test, Father later reported six weeks of sobriety and returned multiple negative tests. But his reintegration case team also received troubling reports regarding Father's conduct—that Father had falsified his tests, that he was abusing Stepmother, and that their marriage was unstable.

2

Because of continued concerns with Father and Stepmother, the district court changed the goal of the case plan in July 2020 from reintegration to adoption. In September 2020, the State moved to terminate Father's and Mother's parental rights.

Until that point, Father had attended several review hearings in person, and his attorney attended any hearings when Father was not present. When the court scheduled the hearing on the State's termination request, the State sent a copy of its motion and the notice of the hearing to Father by certified mail. The State's first envelope was returned undelivered with an indication that Father had moved to a different address. The State then sent the documents to the new address, again by certified mail. This time, the envelope was received—delivered to "A. H[*****]," Stepmother's first initial and last name. The State also sent a copy of the notice and motion to Father's attorney.

Father did not appear at the termination hearing, but his attorney did. At the hearing, Father's attorney objected to the hearing being held, arguing that service on Father was legally deficient because Stepmother, not Father, signed the delivery receipt. After hearing arguments from Father's attorney and the State, the district court found service was valid. In particular, the court emphasized that service was completed by certified mail and a person with the same last name at Father's address signed for (and received) the notice.

Having found proper service, the district court proceeded with the hearing on the State's request to terminate Father's and Mother's parental rights. The State entered a summary of the case timeline into evidence. The court found Father and Mother in default, as neither were personally present at the hearing and neither presented evidence disputing the State's claims. The court then terminated their parental rights.

DISCUSSION

On appeal, Father does not challenge the merits of the district court's termination decision. Instead, he raises a single, procedural issue—claiming the service of the State's motion and the notice of the termination hearing was invalid. He argues that proper service by mail could only be effected if *he personally* signed for those documents on the return receipt and that an acknowledgment of receipt by anyone else rendered the mail service invalid. Without proper service, Father asserts that the termination hearing could not have gone forward. He thus asks this court to reverse the termination order and remand for a new hearing.

The question Father raises is an important one. Parents have a constitutionally protected liberty interest in their relationship with their children. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). While parental rights are not absolute, courts have long recognized that when life, liberty, or property is at stake—including Father's liberty interest as A.P.'s parent—basic principles of fairness require certain procedural safeguards be met. In particular, the United States Constitution's Due Process Clause requires that a person must be given "notice" of any potential deprivation of a protected liberty interest, allowing that person "an opportunity to be heard." *In re Adoption of A.A.T.*, 287 Kan. 590, 600, 196 P.3d 1180 (2008). And both the notice and the opportunity to be heard must be "meaningful." 287 Kan. at 600.

In keeping with these constitutional principles, Kansas law requires a court to notify the affected parties (and potentially several other people) in a case before it conducts a hearing on a request to terminate a person's parental rights. See K.S.A. 2020 Supp. 38-2267(b)(1). K.S.A. 2020 Supp. 38-2267(b)(2) indicates that this notice must be "given by return receipt delivery" at least 10 days before the hearing. The outcome of Father's appeal turns on the meaning of this statutory provision.

4

Appellate courts exercise unlimited review over the interpretation of statutes. See *Fisher v. DeCarvalho*, 298 Kan. 482, 492, 496, 314 P.3d 214 (2013). The ultimate aim of statutory interpretation is to discern legislative intent from the written language the legislature has adopted. *In re T.S.*, 308 Kan. 306, 309, 419 P.3d 1159 (2018). In pursuit of this goal, courts first look to a statute's plain language, using the words' ordinary meanings. *City of Dodge City v. Webb*, 305 Kan. 351, 356, 381 P.3d 464 (2016). When the language of a statute is clear and unambiguous, we will not speculate about legislative intent. And we will not read requirements or limitations into a statute that are not there. *In re T.S.*, 308 Kan. at 310. Instead, we presume that the legislature means what it says and apply the statutory language as written. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014).

As the arguments in this case indicate, the phrase "return receipt delivery," without further context, could have multiple meanings. It could contemplate, for example, delivery by restricted mail—the mode of delivery Father advocates, which restricts delivery to only the person to whom the mail is addressed. Or it could include other forms of delivery that are less restrictive, such as certified mail (used to provide the notice here), priority mail, or other services that notify the sender when the item has been delivered. Fortunately for us, the Kansas Legislature did not use this phrase in a vacuum. Instead, the plain language of a series of connected statutes leads us to our answer.

K.S.A. 2020 Supp. 38-2267, which governs the procedure for serving the notice of a termination hearing, states that the notice must be given "[t]o the parties and interested parties, as provided in K.S.A. 38-2236 and K.S.A. 38-2237." K.S.A. 2020 Supp. 38-2267(b)(1). K.S.A. 2020 Supp. 38-2236 defines *who* must be served with the notice and thus is inapplicable here. But K.S.A. 2020 Supp. 38-2237 sets forth *how* that service may be accomplished. Most notably for our purposes, K.S.A. 2020 Supp. 38-2237(b) explains

5

that "[s]ervice by return receipt delivery is completed upon mailing or sending only in accordance with the provisions of [K.S.A. 2020 Supp. 60-303(c)]."

K.S.A. 2020 Supp. 60-303(c)(1) states that service by return receipt delivery "is effected by certified mail, priority mail, commercial courier service, overnight delivery service or other reliable personal delivery service to the party addressed." Regardless of the delivery method used, the delivery must be "evidenced by a written or electronic receipt" showing who received service, who delivered it, and when and where the mail was delivered. K.S.A. 2020 Supp. 60-303(c)(1). The statute also requires a return of service specifying "the nature of the process, to whom delivered, the date of delivery, the address where delivered and the person or entity effecting delivery," along with a copy of the return receipt. K.S.A. 2020 Supp. 60-303(c)(4).

Notably absent from these provisions is any restriction limiting delivery of the served mail solely to the person to whom the mail is addressed. Instead, Kansas' service statutes indicate that the mail must be *addressed* "to the person to be served." K.S.A. 2020 Supp. 60-303(c)(2); see also K.S.A. 2020 Supp. 60-304(a) ("Service by return receipt delivery must be addressed to an individual at the individual's dwelling or usual place of abode and to an authorized agent at the agent's usual or designated address."). But service is generally effective if a notice is delivered to the individual addressee *or his or her agent*—that is, someone empowered by law or practice to accept the documents. See K.S.A. 2020 Supp. 60-304(a).

Father argues that the phrase "to the party addressed" in K.S.A. 2020 Supp. 60-303(c)(1) modifies *all* the forms of service listed in that subsection. In other words, he asserts that the "to the party addressed" language shows the forms of service—including service by certified mail—can only be effective if the addressee *personally signs for the receipt* of the documents. He asserts that the State and the district court confused certified-mail service with residential service, which allows service by leaving the

6

summons at a person's home with "someone of suitable age and discretion who resides there." K.S.A. 2020 Supp. 60-303(d)(1)(B). We do not find this argument persuasive.

As a starting point, we note that the legislature included the specific limitation Father advocates elsewhere, but it did not include those limitations in K.SA. 2020 Supp. 60-303(c). For example, someone can only accomplish personal service—that is, physically handing documents to a person—by delivering those documents "to the person to be served." K.S.A. 2020 Supp. 60-303(d)(1)(A). The legislature also specifically defined "restricted mail"—the method Father claims should have applied here—in K.S.A. 2020 Supp. 60-103. Thus, the legislature was aware that some forms of service could be restricted to a particular person. Yet it did not include such a restriction in the statutory subsection on return-receipt delivery.

Contrary to Father's assertions, the structure of the statutory language in K.S.A. 2020 Supp. 60-303(c)(1) demonstrates that the "to the party addressed" language is *not* the object of each of the forms of service listed in that subsection. Instead, that phrase only makes sense if it is limited to the last, catchall delivery mode—"other reliable personal delivery service *to the party addressed*." (Emphasis added.) K.S.A. 2020 Supp. 60-303(c)(1). Read this way, K.S.A. 2020 Supp. 60-303(c) includes several examples of service that are considered "return receipt delivery":

- "certified mail,"
- "priority mail,"
- "commercial courier service,"
- "overnight delivery service," and
- any "other reliable personal delivery service to the party addressed."

We find this reading controlling for at least two reasons. First, it maintains consistency between K.S.A. 2020 Supp. 60-303(c) and K.S.A. 2020 Supp. 60-

7

303(d)(1)(A)'s requirement that personal service be delivered "to the person to be served." Second, and more importantly, any other reading would require the first four categories of service listed—including service by certified mail—to meet the requirements of *restricted mail* to be effective. But we have long held that restricted mail is a different delivery method with different requirements from those now listed in K.S.A. 2020 Supp. 60-303(c)(1). See *In re B.K.J.*, 27 Kan. App. 2d 849, 851, 9 P.3d 586 (2000).

*B.K.J.* analyzed a previous service statute for parental-rights cases that authorized service by restricted mail under K.S.A. 60-103. See K.S.A. 38-1534(c). We noted in that case that restricted mail required an endorsement stating, "'deliver to addressee only.'" 27 Kan. App. 2d at 851 (quoting K.S.A. 60-103). In contrast, the statute governing certified mail required a receipt "signed by any person *or* by restricted delivery." (Emphasis added.) K.S.A. 1999 Supp. 61-1803(b). We thus concluded that "[s]ervice of process by restricted mail is different from service by certified mail." 27 Kan. App. 2d at 851. And because the relevant statute required service by restricted delivery, service by certified mail was invalid.

Since *B.K.J.* was decided, the legislature has amended the statutes governing service in CINC adjudications and cases involving the termination of parental rights. While the previous statute authorized service by restricted mail, Kansas law now permits service by "return receipt delivery." Compare K.S.A. 38-1534(c), with K.S.A. 2020 Supp. 38-2237(b) and K.S.A. 2020 Supp. 38-2267(b). Yet statutes in other contexts continue to require notice by restricted mail. See, e.g., K.S.A. 31-150a(a) (requiring restricted mail notice for fire prevention code violations); K.S.A. 2020 Supp. 60-2803(a) (judgment creditor must send satisfaction and release of judgment by restricted mail); K.S.A. 43-166 (requiring restricted mail for jury summons, but with the option to use first-class mail instead at the jury commissioner's discretion).

8

Continuing to impose restricted-mail requirements on return-receipt-delivery service under K.S.A. 2020 Supp. 38-2237 and K.S.A 2020 Supp. 38-2267 would render this change meaningless. K.S.A. 2020 Supp. 60-303 does not include any restrictive requirement beyond that the envelope be "addressed to the person to be served" and result in a return receipt. K.S.A. 2020 Supp. 60-303(c)(2), (3). And the legislature has specifically indicated that service by certified mail is sufficient. See K.S.A. 2020 Supp. 38-2237(b); K.S.A. 2020 Supp. 60-303(c).

Applying these principles to the case before us, service was valid when the State sent Father the notice of the termination hearing via certified mail addressed to Father at his residence and obtained a return receipt. The fact that Stepmother appears to have signed the return receipt does not render that service defective. Thus, the district court did not err when it found service proper and proceeded to consider the merits of the State's termination request.

Before we conclude, we pause to address Father's argument that—as a matter of public policy—every effort should be made to ensure that a person receives notice of a court proceeding before his or her parental rights are terminated by the State. While we appreciate the common-sense appeal of Father's claim, questions of public policy are for legislative and not judicial determination. *State v. Spencer Gifts*, 304 Kan. 755, Syl. ¶ 4, 374 P.3d 680 (2016). We also observe that this is not a case where Father was left in the dark about the termination hearing or only learned of that hearing after it occurred. The record indicates that although Father was not personally present at the termination hearing, his attorney attended—and we may reasonably infer from that attendance that Father knew the hearing was taking place. While this fact has no effect on the legal sufficiency of the service of the hearing notice, it mitigates somewhat Father's equitable attacks on the fairness of the proceedings.

Kansas law authorizes notice of hearings concerning the termination of parental rights to be served by return receipt delivery; it does not require that the delivery be restricted to the person to be served. The district court did not err when it found that the service of the notice by certified mail was sufficient in this case.

Affirmed.