NOT DESIGNATED FOR PUBLICATION

No. 126,570

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of C.S. and J.S., Minor Children.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; JOAN M. LOWDON, judge. Submitted without oral argument. Opinion filed January 26, 2024. Affirmed in part and dismissed in part.

*Chadler E. Colgan*, of Colgan Law Firm, LLC, of Kansas City, for appellant natural mother.

*Ashley Hutton*, assistant county attorney, and *Todd Thompson*, county attorney, for appellee.

Before ATCHESON, P.J., MALONE and BRUNS, JJ.

MALONE, J.: C.E.S., also known as C.G., (Mother) appeals the district court's order terminating her parental rights over her two minor children, C.S. (YOB 2019) and J.S. (YOB 2016). She also appeals the district court's order denying her post-termination motion to consider new evidence, make additional findings, and to set aside, in part, the order terminating her parental rights. For reasons we will explain below, we find the district court's order terminating Mother's parental rights was supported by clear and convincing evidence. We also find this court lacks jurisdiction to review the other order that Mother seeks to appeal. The final appealable order in a child in need of care (CINC) case is the termination order. Thus, we affirm the district court's judgment terminating Mother's parental rights and dismiss the second issue Mother raises in this appeal.

1

FACTUAL AND PROCEDURAL BACKGROUND

In March 2021, the State filed two petitions alleging that C.S. and J.S. were children in need of care. The petitions stated that the Kansas Department for Children and Families (DCF) received a report in February 2021 alleging that Mother and Father were neglecting the children. Latoya Player, a child protection specialist, visited the home of the children's paternal grandparents where Mother and Father had been residing for the past two and a half years. The grandparents informed Player that they provided almost all the care for the children. The grandparents reported that Mother and Father used crack cocaine and that they had found drug paraphernalia and prescription pills strewn about the basement where Mother and Father resided. They also reported that Mother and Father would often leave the children unsupervised.

DCF workers unsuccessfully tried to contact Mother and Father, both in person and by telephone. Soon after DCF contacted the family, Mother and Father left without telling anyone where they were going. According to the grandparents, Mother and Father briefly returned to their house a couple of times and contacted them a few more times by phone, usually to ask for money. During these contacts, the parents barely interacted with the children. When the State filed the petitions, the grandparents did not know where Mother and Father could be located. They believed Mother and Father were living out of a truck somewhere in Leavenworth County.

The district court entered an ex parte order of protective custody and DCF placed the children with their grandparents. Cornerstones of Care (Cornerstones) was designated to provide services in the case. The district court held a temporary custody hearing in April 2021 and found that the children should remain in DCF custody. The court also appointed counsel to represent each parent. In June 2021, the district court held an adjudication hearing at which both children were adjudicated to be children in need of care, and the court continued their out-of-home placement.

DCF prepared a case plan for Mother and Father. Under the plan, the parents were supposed to obtain stable housing and provide verification, obtain stable income and provide verification, maintain consistent visitation with the children, complete a parenting education course, complete an initial assessment and follow the recommendations, complete a mental health assessment and follow the recommendations, resolve all legal issues, participate in a domestic violence assessment and follow the recommendations, complete a drug and alcohol assessment and follow the recommendations, and submit negative drug tests.

Mother completed the initial assessment, but after that she failed to work to complete the case plan tasks. Father, on the other hand, made substantial progress and eventually was permitted to have overnight visits with the children. In March 2022, one year after the CINC petitions were filed, the State moved to terminate Mother's (but not Father's) parental rights because Mother had failed to participate in the case plan.

The termination hearing was initially scheduled for June 2022, but the matter was continued because of a question about whether Mother had received notice of the hearing. The district court reconvened on July 20, 2022. Mother had been personally served with notice for the hearing. Mother failed to personally appear at the hearing but was represented by counsel. The State proffered into evidence all the filings in the case including the CINC petition and supporting affidavit, all the court reports from Cornerstones including attachments, the motion for termination of parental rights, and the original reintegration plan. Mother's attorney did not object to the State's proffer or make his own, stating that he "had very little, if any, contact with [his] client."

Based on the proffered evidence, the district court found Mother was unfit on several statutory grounds and that her unfitness was unlikely to change in the foreseeable future. The district court also found that termination of Mother's parental rights was in the

3

best interests of the children. The district court later filed a journal entry terminating Mother's parental rights with detailed findings of fact and conclusions of law.

*Post-termination proceedings*

Mother filed a timely notice of appeal from the district court's decision to terminate her parental rights, but she did not timely docket her appeal with this court. Meanwhile, the State kept working toward reintegration with Father. The children were placed in Father's home in February 2023 as he kept progressing toward reunification. The record reflects that Mother and Father were married at the time of the termination hearing and have remained married afterward.

Mother moved to dismiss her appeal in March 2023. She stated her belief that the district court's 2021 temporary custody order operated as a "no contact" order which prevented her from seeing her children without DCF or court approval. She also believed that her pending appeal was delaying the closure of Father's CINC case. Mother thought that by dismissing her appeal, Father's CINC case could be closed, and she could visit her children again at Father's discretion and without needing DCF or court approval. Mother acknowledged that dismissing her appeal would finalize the termination of her parental rights, but she also said that she had made significant progress since her parental rights were terminated and that "she would be able to present substantial evidence as to her current fitness to be a parent to the minor children and be reunified with them."

On April 28, 2023, before the district court had a chance to address Mother's motion to dismiss her appeal, Mother filed a motion asking the court to consider new evidence, make additional findings, and to set aside, in part, the order terminating her parental rights. More specifically, she asked the district court to set aside its findings that her unfitness was unlikely to change in the foreseeable future and that termination was in the best interests of the children. Mother claimed that since the termination hearing, she

4

had "significantly altered the course of her life." She claimed she had completed drug treatment in July 2022 and had tested negative for drugs since then. Mother attached her negative drug tests, pay stubs, and verification that she completed drug treatment as exhibits to her motion. Mother suggested two bases on which the district court could set aside the prior decision. First, she suggested that the new evidence was relevant to the district court's ongoing statutory duty under K.S.A. 38-2264 to establish permanency for the children. Second, she suggested that grounds existed under K.S.A. 2022 Supp. 60-260(b)(1), (b)(2), and (b)(6) to set aside the relevant findings.

On June 7, 2023, the district court heard arguments on Mother's motion to consider new evidence, make additional findings, and to set aside, in part, the order terminating her parental rights. At the time of the hearing, Father was doing well enough that caseworkers recommended that the children be released from DCF custody. After hearing arguments of counsel, the district court denied Mother's motion, finding that it did not have statutory authority to set aside the termination order. The district court granted Mother's request to proffer into evidence Mother's exhibits that were referred to by her counsel at the hearing. The district court later filed a journal entry reflecting its ruling at the June 2023 hearing.

The district court never ruled on Mother's March 2023 motion to dismiss her appeal. On June 13, 2023, the State also moved to dismiss Mother's appeal from the termination order because the appeal had not been timely docketed. Four days before the scheduled hearing on the State's motion to dismiss, Mother moved this court to docket her appeal out of time. Mother also filed a second notice of appeal which included the district court's decision at the June 2023 hearing along with all other adverse decisions. This court granted Mother leave to docket her appeal out of time.

DID THE DISTRICT COURT ERR IN TERMINATING MOTHER'S PARENTAL RIGHTS?

Mother appeals from two district court orders: (1) the July 2022 order terminating her parental rights, and (2) the June 2023 order denying her motion to consider new evidence, make additional findings, and to set aside, in part, the termination order. Her first issue is that the district court erred in terminating her parental rights.

When a child has been adjudicated to be a child in need of care under the Revised Kansas Code for Care of Children (Revised Code), K.S.A. 38-2201 et seq., the district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for the child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 38-2269(g)(1). In making such a decision, the court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 38-2269(g)(1).

In reviewing the district court's fitness determination, "this court must determine, after reviewing all the evidence in a light most favorable to the State, whether a rational fact-finder could have found the ultimate determination to be highly probable, i.e., by clear and convincing evidence." *In re T.H.*, 60 Kan. App. 2d 536, 547, 494 P.3d 851 (2021). Appellate courts do not "weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." 60 Kan. App. 2d at 547. This court reviews the district court's best interests finding for abuse of discretion. 60 Kan. App. 2d at 555.

The district court's termination of Mother's parental rights was somewhat unusual because the court based its decision entirely on proffered evidence, but the court handled the hearing properly under K.S.A. 38-2248(f). Mother failed to appear at the termination

6

hearing although she had been personally served with notice of the hearing. Mother was represented by counsel at the hearing, so she was not in default. In this situation, K.S.A. 38-2248(f) provides that "the case may proceed by proffer as to the parties not present, unless they appear by counsel and have instructed counsel to object." The State proffered into evidence essentially the entire case file including the CINC petition and supporting affidavit, all the court reports from Cornerstones including attachments, the motion for termination of parental rights, and the original reintegration plan. Mother's attorney did not object to the proffer, stating that he "had very little, if any, contact with [his] client."

Mother makes a conclusory argument that the State's proffer did not rise to the level of clear and convincing evidence to support termination. Though she reviews the evidence, she does not explain why she believes it was insufficient. The district court relied on several statutory factors listed in K.S.A. 38-2269(b) and (c) to support its finding that Mother was unfit. Specifically, K.S.A. 38-2269(b)(3) ("the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child"); K.S.A. 38-2269(b)(4) ("physical, mental or emotional . . . neglect . . . of a child"); K.S.A. 38-2269(b)(7) ("failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family"); K.S.A. 38-2269(b)(8) ("lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child"); K.S.A. 38-2269(c)(2) ("failure to maintain regular visitation, contact or communication with the child or with the custodian of the child"); and K.S.A. 38-2269 (c)(3) ("failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home").

The State presented clear and convincing evidence to support findings under each factor. As for Mother's drug use, the State presented evidence from the children's grandparents that Mother's drug use was impacting her fitness to care for the children. The basement where Mother and Father were staying with the children was littered with

7

torn up Brillo pads used to ingest crack cocaine. Mother was barely caring for the children, either emotionally or financially, leaving their grandparents to care for them. During the two and a half years that Mother lived with the grandparents, she cared for the children less and less. The situation concerned the grandparents so much that they asked for guardianship of the children a year before the CINC case was filed. Mother presented no evidence at the termination hearing suggesting that her drug use had changed, and thus the district court had a sound basis to find that Mother was unfit because her drug use rendered her unable to care for the children. For similar reasons, the district court's finding that Mother was unfit because she neglected the children was also sound. Not only did Mother neglect the children before the CINC case began, but she continued to neglect them by failing to provide any care after the case was filed. These facts support the district court's findings under K.S.A. 38-2269(b)(3) and (b)(4).

After removing the children from Mother's custody, the State presented her with a case plan to reintegrate with the children. Court reports, prepared by Mother's caseworkers, demonstrate that the State made reasonable efforts to contact Mother. The State tried to call, text, and email Mother. Mother's caseworkers also searched for Mother in several locations that people provided them, but the workers could not find her. There is no sign that the State made anything less than reasonable efforts to contact Mother, and there was only so much the State could do for her as she was avoiding contact with her caseworkers. Mother made no effort to contact her caseworkers or adjust her circumstances. Additionally, because she did not work with the caseworkers, Mother failed to carry out the case plan that they prepared for her. Her failure to contact caseworkers also made her unable to visit her children. These facts support the district court's findings under K.S.A. 38-2269(b)(7), (b)(8), (c)(2), and (c)(3).

The district court also found that Mother's unfitness was unlikely to change in the foreseeable future. This holding is supported by clear and convincing evidence. "In determining whether a parent's conduct or condition is likely to change in the foreseeable

future, the foreseeable future is to be considered from the child's perspective, not the parents', as time perception of a child differs from that of an adult." *In re S.D.*, 41 Kan. App. 2d 780, Syl. ¶ 9, 204 P.3d 1182 (2009). The State's evidence showed that Mother made no progress toward the reintegration plan in more than one year after the case was filed. There was no evidence that would suggest that Mother was even willing to change at the time of the termination hearing. Given that no evidence revealed a change in Mother's condition, it was reasonable for the district court to conclude that her unfitness was unlikely to change in the foreseeable future.

Finally, the district court found that termination of Mother's parental rights would be in the best interests of the children. Mother claims that the district court described the evidence supporting the best interests finding as "slim," but that mischaracterizes the court's statement. What the district court said was that the State's motion for termination included a conclusory statement that termination was in the best interests of the children. The district court then looked at the evidence and found that Mother ignored the reintegration plan. The district court believed that the children deserved permanency and that Mother had made no effort to provide the necessary stability for her children. Mother fails to meet her burden on appeal that the district court abused its discretion in finding that termination of Mother's parental rights was in the best interests of the children.

In sum, the State presented clear and convincing evidence that Mother was unfit by reason of conduct or condition that rendered her unable to properly care for her children and the conduct or condition was unlikely to change in the foreseeable future. And the district court did not abuse its discretion by finding that termination of Mother's parental rights was in the children's best interests. Based on the evidence proffered at the termination hearing, the district court did not err in terminating Mother's parental rights.

## DID THE DISTRICT COURT ERR IN DENYING MOTHER'S MOTION TO CONSIDER NEW EVIDENCE AND TO SET ASIDE, IN PART, THE TERMINATION ORDER?

The next issue is whether the district court erred in denying Mother's post-termination motion to consider new evidence, make additional factual findings, and to set aside, in part, the order terminating her parental rights. Mother argues that there were two avenues through which the district court could have provided the requested relief. First, she argues that the district court should have considered the new evidence as part of its "ongoing statutory requirement to establish permanency for the minor children" under the Revised Code. Second, she argues that grounds existed under K.S.A. 2022 Supp. 60-260(b)(1), (b)(2), and (b)(6) to partially set aside the termination order. Mother acknowledges in her brief that there may be a jurisdiction problem with this court addressing this issue based on caselaw holding that the order terminating parental rights is the last appealable order under K.S.A. 38-2273(a), but Mother tries to distinguish the prior caselaw.

Resolution of this issue requires statutory interpretation and questions of statutory interpretation are subject to unlimited review. *In re T.S.*, 308 Kan. 306, 309, 419 P.3d 1159 (2018). The existence of jurisdiction is also a question of law subject to unlimited review. *In re N.E.*, 316 Kan. 391, 402, 516 P.3d 586 (2022).

We must first address whether this court has jurisdiction to review the district court's order denying Mother's post-termination motion to consider new evidence, make additional findings, and to set aside, in part, the termination order. "The right to appeal is purely statutory, and an appellate court has a duty to question jurisdiction on its own initiative. An appeal must be dismissed if the record shows that the appellate court does not have jurisdiction." *In re A.F.*, 38 Kan. App. 2d 742, 743, 172 P.3d 63 (2007).

The Revised Code contains its own statute on appellate jurisdiction that is more specific than the statutory framework in the Code of Civil Procedure. K.S.A. 38-2273(a) provides five categories of appealable orders: "An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." We must first determine whether the order from June 2023 hearing which Mother appeals fits within any of these five categories. If it does not, then this court is without jurisdiction to consider the merits of this issue.

The Kansas Supreme Court performed an exhaustive analysis of K.S.A. 2012 Supp. 38-2273(a) in *In re N.A.C.*, 299 Kan. 1100, 329 P.3d 458 (2014). The court noted that each of the five categories of appealable orders represents a different phase of a CINC proceeding. The steps are sequential, "with each step occurring in a specific order leading toward permanency in the child's placement." 299 Kan. 1100, Syl. ¶ 5. When one phase ends, the next begins. The court's holding in *In re N.A.C.* is abundantly clear: "An order terminating parental rights is the last appealable order under K.S.A. 2012 Supp. 38-2273(a)." 299 Kan. 1100, Syl. ¶ 6. The court reasoned that its interpretation of K.S.A. 2012 Supp. 38-2273(a) adheres to sound legislative policy:

> "Appellate review can come at a heavy cost for the young children caught up in CINC proceedings. Through its enactment of the Revised Code, the legislature has balanced whatever perceived value there may be in letting interested parties struggle back and forth among themselves at every stage in post-termination proceedings against the child's recognizable need for permanency. [Citation omitted.]" 299 Kan. at 1121.

The Kansas Legislature has not amended K.S.A. 38-2273(a) since *In re N.A.C.* was decided. The Kansas Supreme Court more recently reaffirmed its holding and analysis in *In re N.A.C.* in *In re N.E.*, 316 Kan. 391, 413-18, 516 P.3d 586 (2022).

The order that Mother seeks to appeal was entered after the district court terminated her parental rights in July 2022. In fact, Mother already had filed a notice of

11

appeal from the district court's order terminating her parental rights. Nine months later, in April 2023, Mother moved the district court to "consider new evidence" and to "make additional factual findings" concerning the termination of her parental rights. Mother asked the district court to set aside its findings that her unfitness was unlikely to change in the foreseeable future and that termination was in the best interests of the children. Before we can address whether Mother had any authority to file such a motion under the Revised Code or under the Code of Civil Procedure, we must first decide whether the district court's order denying the motion is an appealable order under K.S.A. 38-2273(a). We conclude that it is not. K.S.A. 38-2273(a) does not provide this court with jurisdiction to consider any orders entered after the order terminating Mother's parental rights.

Mother suggests that *In re N.E.* and *In re N.A.C.* are distinguishable because "the parties there were relatives or grandparents, not natural mother or father and not an intact family unit where the parties remained married." But nothing in K.S.A. 38-2273(a) suggests that the relationship between the parties impacts this court's jurisdiction, so this argument is unpersuasive. Likewise, the fact that Mother was seeking to modify the original termination findings does not make the district court's June 2023 ruling a termination order appealable under K.S.A. 38-2273(a). To find otherwise would contravene the sound legislative policy in favor of the child's need for permanency and against allowing parties to struggle back and forth in post-termination proceedings.

We recognize this is an unusual case. As we have discussed, the record shows that the children have been reunited with Father. Father and Mother remain married and presumably live together with the children. So the nuclear family is physically intact with a peculiar twist: Mother has no legal right or authority to parent C.S. and J.S. That twist, however anomalous, cannot alter the clear statutory rules limiting appeals under the Revised Code. We find it commendable if Mother, in fact, has "significantly altered the course of her life" for her children, and we suggest there may be proceedings under Chapter 59, Articles 21 or 30, that might reestablish a legal relationship between Mother

12

and her children. Also, procedures under Chapter 58, Article 6, may provide a way for Mother to obtain some of the decision-making powers of a parent. But we find under the Revised Code that this court lacks jurisdiction to review the district court's order denying Mother's post-termination motion to consider new evidence and to set aside, in part, the termination order. As a result, we dismiss the second issue Mother raises in this appeal.

Affirmed in part and dismissed in part.